James L. Hanegan, a Minor, by Lyle Hanegan, His Father and Next Friend, Plaintiff-Appellee, v. Horace Mann Mutual Insurance Company, a Mutual Company, and The Farmers Automobile Insurance Association, Defendants-Appellants.

Gen. No. 65–122.

Second District.

November 30, 1966.

O'Brien, Burnell, Puckett and Barnett, of Aurora, and Maynard and Maynard, of Rockford, for appellants.

Boyles & Cordes, and John Castle, all of DeKalb, for appellee.

MR. PRESIDING JUSTICE MORAN delivered the opinion of the court.

Defendant insurance companies each appeal from judgments rendered against them in favor of the minor plaintiff. The judgment against defendant, The Farmers Automobile Insurance Association, was for Three Hundred Forty-three and 54/100 Dollars ($343.54) and costs of suit and the judgment against defendant, Horace Mann Mutual Insurance Company, was for One Hundred Seventy-one and 77/100 Dollars ($171.77) and costs.

This controversy arises out of an automobile collision which occurred April 1, 1961, between vehicles driven by plaintiff James Hanegan and one Geraldine Hart.

At the time of the collision Hanegan was driving a 1950 Pontiac automobile which was owned by Mr. Charles Mellinger. Mellinger was the owner of a policy of insurance issued by The Farmers Automobile Insurance Association. This policy contained the usual clause defining persons insured as follows:

Persons Insured  The following are insureds under Part 1:

"a.  With respect to the owned automobile, (1) the named insured and any resident of the same household (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured."

The "Other Insurance" clause of the policy provided:

"If the insured has other insurance against a loss covered by Part 1 of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

On the morning of the accident Charles Mellinger's seventeen-year-old son Gary was using his father's automobile. He picked up the plaintiff, James Hanegan, and two other young men and drove to the University Shopping Center in DeKalb, Illinois. They went to the barber shop in the Shopping Center where Gary Mellinger intended to get a haircut. The plaintiff, Hanegan, asked

143

Gary if he might borrow the car to get something to eat. Gary consented and gave the car keys to the plaintiff. The plaintiff, with one of the other boys as a passenger, drove out of the Shopping Center and collided with a car driven by Geraldine Hart and owned by Robert Hart.

The plaintiff's father, Lyle Hanegan, had insurance with defendant Horace Mann Mutual Insurance Company. That policy contained a provision defining insured with respect to a nonowned automobile as, ". . . the named insured, any relative, . . . provided the actual use thereof is with the permission of the owner, . . ." The Horace Mann policy contained an "Other Insurance" provision identical to the corresponding provision in the Farmers policy.

Robert Hart filed action against James Hanegan for property damages to his automobile. Plaintiff submitted the defense of the case to each of the defendant insurance companies and each refused to accept the defense.

The plaintiff then retained private counsel to defend him and upon trial of that cause Robert Hart recovered judgment and this action against the insurance companies followed.

This case was tried before the court and resulted in a finding that plaintiff was entitled to recover the amount of the Hart judgment plus interest, plus Two Hundred Dollars ($200) for attorney's fees and plus costs. The court assessed one-third of the damages against Horace Mann and two-thirds of the damages against Farmers and each company has appealed.

At the trial before the court plaintiff James Hanegan testified that he was sixteen years old, a high school student and a licensed driver. He testified that he rode with Gary Mellinger in the automobile in question on many occasions and that Gary would drive the car to school two or three times a week as well as to social and athletic functions on weekends. He testified that Gary had the car key on a key chain with his house key and a

key to his school locker. He also testified that on the day of the accident Gary picked him up at his home and that while they were in the barber shop Gary granted him permission to take the car to get something to eat and gave him the car keys.

Charles Mellinger, Gary's father, testified that Gary only occasionally drove the car to school and that Gary was given the key whenever he was to use the car. Mr. Mellinger was not certain whether there was a set of keys for Gary. He had no conversation with his son on the day of the accident concerning the use of the car by himself or anyone else and he had never given his son any specific instructions concerning the automobile's use by someone else.

Approximately a year before the accident when Gary first received his driver's license there was a conversation to the effect that Gary had to have the permission from either his mother or father to use the car. He stated that so far as he knew Gary had never permitted any of his friends to drive the car.

The trial court in commenting on the facts stated that it believed the son Gary had a set of keys to the automobile, that Gary was not prohibited by his parents from allowing other persons to drive the automobile and that Gary had expressly permitted the plaintiff to drive the car at the time of the accident.

The trial court reviewed both Hays v. Country Mut. Ins. Co., 28 Ill2d 601, 192 NE2d 855 (1963), and Fireman's Fund Indemnity Co. v. Freeport Ins. Co., 30 Ill App2d 69, 173 NE2d 543 (1961), and came to the conclusion that the facts of this case were closer to the facts in the Fireman's Fund case than in the Hays case and, therefore, ruled in favor of the plaintiff and against the insurance companies on a pro rata basis.

In the Fireman's Fund case the proofs were that the automobile was being used for a social purpose; that the son permitted his girl friend to drive the car while he

and a friend were in the automobile rehearsing a play; that the father had purchased the car for his son and had given his permission to use the car at anytime the son desired; that the son had his own key to the car, but the father also had a key and occasionally drove the car but had another automobile for his own use; that he did not know that the son was on the particular trip until after the accident; and that the father knew the son was dating the young lady who was driving the car at the time of the accident but had never discussed with his son whether or not anyone else would be permitted to drive the vehicle.

The Appellate Court sustained the trial court's holding that the young lady had implied permission of the father-owner to drive the vehicle. The court commented that permission would be more readily assumed where the general use is for social rather than business purposes and will also be more readily assumed where the permittee has general custody of the car rather than a limited permission. The court went on to hold that the son had the general use of the car with his father's permission and that this general permission includes the authority to delegate the driving to another while the permittee is using the car.

On the other hand, in Hays v. Country Mut., supra, the factual situation was somewhat different and the Supreme Court held that there was no permissive use. In that case the automobile was owned by a man who permitted his sixteen-year-old daughter, fifteen-year-old son and a younger daughter to take the family car into town on a Saturday evening. The sixteen-year-old daughter had a date and the two younger children were planning to see a movie. The sixteen-year-old daughter had just received her driver's license and after some hesitation her father permitted her to take the car for the evening with specific instructions that she was to do the driving and that the car was to be driven into town and

parked at the square and was not to be driven around. They were to go into the show and come out and return home. Shortly thereafter, the daughter with her brother and sister riding in the car drove the car into town. After they arrived, the fifteen-year-old son granted permission to another young man to take the automobile. This young man had no driver's license. He took the automobile with three other young people to an adjoining town and on the return trip he lost control of the car and the accident occurred resulting in injuries to one of his passengers.

The Supreme Court held that the evidence established that the original permission had been granted for a specified and limited purpose only and that the use of the car at the time of the accident was totally disassociated from the original use.

We feel that although the facts of this case bear some relationship both to the Fireman's Fund case and the Hays case, the facts are not substantially similar with either of these decisions. This case is dissimilar from the Fireman's Fund case in that the automobile there was purchased specifically for the use of the son, that he could use it whenever he wished and that he was riding in the car as a passenger at the time of the accident. This case likewise differs from the Hays case in that there the sixteen-year-old daughter did not have the keys to the car, did not usually drive the car for social purposes and she was under quite explicit instructions from her father as to the use of the car on that occasion.

However, in the Hays case, the Supreme Court laid down guidelines for determining the question of implied permission. The Supreme Court stated commencing at page 608 as follows:

> "In the light of the purposes of the requirement of permission, the authorities relied upon by the plaintiff are distinguishable. The interests both of the insured and of the insurance company center upon

147

the identity of the permittee, his relation to the insured and his ability and responsibility as a driver. The use to which he puts the vehicle while it remains in his control may be regarded as of secondary importance to the question of coverage. Decisions holding that coverage persists despite a deviation from the permitted scope in route, purpose, or duration of use do not therefore compel the conclusion that coverage should also extend to third persons whom the original permittee has, without authority, allowed to use the car. The rule that initial permission will suffice applies in reason only when that permission was granted to the user sought to be brought within the coverage of the policy. Of course the named insured may by express authorization delegate to his permittee the power to grant permission to others, and circumstances surrounding the original permission may support an implication of such an authorization. Thus where the permittee is in every practical sense the owner of the car, and the named insured holds title for convenience, the general custody and control of the permittee is usually held to empower him to grant permission to others within the scope of an omnibus clause, at least in the absence of express prohibition. (See, e. g. Hinckley v. National Surety Co. 99 NH 373, 111 A2d 827 (1955); Fireman's Fund Indemnity Co. v. Freeport Insurance Co. 30 Ill App2d 69; cf. Norris v. Pacific Indemnity Co. 39 Cal2d 420, 247 P2d 1 (1952).) If the original permittee retains control of the car, but turns over its physical operation to a third person while remaining a passenger, an implied permission has been found in the continued use and control of the original permittee. (See Standard Accident Insurance Co. v. New Amsterdam Casualty Co. 249 F2d 847 (7th cir 1957); Fireman's Fund Indemnity Co. v. Freeport Insurance Co. 30 Ill App2d 69.) Even

where the original permittee is not a passenger, an inference of permission has been sustained where the third person is engaged on some errand or activity for the benefit, advantage, or purposes of the original permittee. (See Aetna Life Insurance Co. v. Chandler, 89 NH 95, 193 A 233 (1937).) A course of conduct, establishing that the original permittee was allowing third persons to drive with the knowledge of the named insured and without his objection, may also support a finding of implied permission. See, e. g., Odden v. Union Indemnity Co. 156 Wash 10, 286 Pac 59 (1930); Shoup v. Clemans, (Ohio App) 31 NE2d 103 (1939); cf. Goff v. New Amsterdam Casualty Co. 318 Ill App 586.

"No such circumstances are revealed by this record. The insured had not given general custody and control, akin to ownership, to Eleanor and Roger; he allowed them to use the car only for a limited and specified purpose. Nothing in the circumstances suggests that if the question had been put to him he would have approved the use of his car for a joy ride by an unlicensed 15-year old. No member of the Daily family was present as a passenger, and there was no benefit or advantage to Eleanor or Roger. Nothing has been shown to establish a course of conduct by which Thomas Hargis used the car with the insured's knowledge and without his objection. We are unable to discern any basis to support a finding of permission."

The record reveals no evidence that Gary Mellinger, the original permittee, was in every practical sense the owner of the car, or that Gary retained control of the car while remaining a passenger therein.

Plaintiff contends that the use of the Mellinger car at the time of the accident was for the benefit of Gary Mellinger and Third Nat. Bank v. State Farm Mut. Auto

149

Ins. Co. (Ky), 334 SW2d 261 (1960), is cited in support of this argument. We do not believe that Gary Mellinger had any obligation either social or otherwise to accommodate the desire of the plaintiff and the other boy to have something to eat and we cannot see that their taking the car to a restaurant while Gary was getting a haircut was in any way a convenience for him.

The remaining category found in the Hays case as to implied permission would be evidence that Gary had allowed third persons on other occasions to drive his father's car, coupled with the fact that his father, the insured, had knowledge of such fact and did not object. The record is void of any such evidence.

The best that can be said from the evidence in this case is that since the insured did not expressly prohibit the permittee from allowing third persons to drive his automobile, an implied permission should be found. Such a result would not only add to the categories enumerated by our Supreme Court in the Hays case, but go beyond what to date has been the law in Illinois.

In absence of permission by Charles Mellinger, either expressed or implied, neither defendant owed coverage.

In light of this decision it is not necessary for us to consider the question of assessing the judgment as between the respective defendants; however, we note that this problem has been resolved by the recent decision of the Supreme Court in New Amsterdam Cas. Co. v. Certain Underwriters at Lloyd's, London, 34 Ill2d 424, 216 NE2d 665 (1966), and by this court in Jensen v. New Amsterdam Ins. Co., 65 Ill App2d 407, 415, 416, 213 NE2d 141 (1966).

Judgment reversed.

ABRAHAMSON and DAVIS, JJ., concur.