STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
A CORPORATION, APPELLEE, V. RALPH E. KERSEY ET AL.,
APPELLANTS.

106 N. W. 2d 31

Filed November 18, 1960. No. 34791.

*Munro, Parker & Munro* and *Dryden & Jensen,* for appellants.

*John E. Dougherty* and *Healey, Wilson & Barlow,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action brought in the district court for Buffalo County by the State Farm Mutual Automobile Insurance Company, a corporation, as plaintiff, against Ralph E. Kersey, Merreta Kersey, Dale O. Beavers, administrator of the estate of Gregory Beavers, deceased, Mrs. Ralph E. Kersey, first and real name unknown (the record shows that Mrs. Ralph E. Kersey is also known as Jessie Kersey), Joyce Kersey, and James Kersey, minors, defendants. Merreta Kersey, James Kersey, and Joyce Kersey, minors, were represented by a guardian ad litem. The purpose of the action was to obtain a declaratory judgment determining the liability of plaintiff, if any, under the provisions of an insurance policy issued by it to Ralph E. Kersey covering his 1952 Oldsmobile sedan, because of an automobile accident which occurred while Merreta Kersey, a minor daughter of insured Ralph E. Kersey, was driving his automobile, resulting in injuries to Merreta, James, and Joyce Kersey who were riding in the automobile, and causing the death of Gregory Beavers, a minor, who was also riding in said automobile.

This case was tried to the court without a jury. The trial court rendered judgment in favor of the plaintiff and against all of the defendants; that each of the defendants be declared to have no rights, titles, or inter-

est in and to the policy of insurance issued by the plaintiff to the defendant Ralph E. Kersey; that the plaintiff be relieved of the burden and expense of defending Merreta Kersey in an action brought in the district court for Buffalo County wherein Dale O. Beavers, as administrator of the estate of Gregory Beavers, deceased, was plaintiff and Merreta Kersey was defendant; that Dale O. Beavers, as such administrator, be declared to have no rights, titles, or interest in and to the said policy of insurance or its medical coverage provisions as a result of the accident occurring on August 31, 1956; that Ralph E. Kersey or any of the minor defendants be declared to have no rights, titles, or interest under the medical provisions of said policy; and that the plaintiff be relieved therefrom.

The defendants filed an application for special findings of fact. The trial court found that the application should be granted and that the same constituted a part of the journal entry filed in this cause. The trial court found that the defendant Merreta Kersey drove the automobile owned by the defendant Ralph E. Kersey alone on July 4, 1956, in Overton, Nebraska, with the permission of defendant Ralph E. Kersey; that the defendant Merreta Kersey drove the automobile of the defendant Ralph E. Kersey alone, with the permission of Ralph E. Kersey, in Smithfield, Missouri, during the summer of 1955; that the defendant Ralph E. Kersey permitted the defendant Merreta Kersey to drive the automobile on country roads and in the village of Elm Creek, Nebraska, a number of times during the year preceding the accident of August 31, 1956, when the defendant Ralph E. Kersey was with her and gave her driving lessons at said times; that the defendant Merreta Kersey drove the automobile owned by the defendant Ralph E. Kersey back and forth on the family driveway both with and without the express permission of the defendant Ralph E. Kersey, approximately 12 to 15 times prior to the accident; that the defendant Ralph E. Kersey had knowl-

edge that Merreta Kersey was driving the car on the driveway and never objected; that the defendant Ralph E. Kersey did not notify his daughter Merreta Kersey that she was not to drive the car on a country road at the time the accident took place or at any other time; and that the defendant Ralph E. Kersey used his automobile in his business and almost always drove the automobile when he left home.

The trial court further found that neither parent of Merreta Kersey gave permission, directly or by implication, to Merreta Kersey to drive the automobile on August 31, 1956; and that the evidence in the case neither expressly or impliedly gave or granted Merreta Kersey permission to drive said automobile other than in the company of her father.

The defendant Dale O. Beavers, administrator of the estate of Gregory Beavers, deceased, filed a motion for new trial. The defendants F. M. Parker, guardian ad litem for Merreta Kersey, Joyce Kersey, and James Kersey, minors, Ralph E. Kersey, and Jessie Kersey, filed a motion for new trial. The trial court overruled all of the defendants' motions for new trial, and defendants perfected appeal to this court.

It was stipulated by the parties that the plaintiff is a corporation authorized to do business in this state; that Ralph E. Kersey is a resident of Elm Creek, Nebraska, and the father and natural guardian of Merreta, Joyce, and James Kersey, minor children, and that Mrs. Ralph E. Kersey, also known as Jessie Kersey, is the wife of Ralph E. Kersey; that Dale O. Beavers is the administrator of the estate of Gregory Beavers, deceased, pending in the county court of Buffalo County; that the plaintiff, in Nebraska, entered into a policy of insurance with Ralph E. Kersey covering a 1952 Oldsmobile sedan automobile owned by him; that on August 31, 1956, while said automobile was being driven by Merreta Kersey it overturned on a country road north of Elm Creek; that at the time of the accident Joyce

Kersey, James Kersey, and Gregory Beavers were riding in said automobile; that it is the contention of Ralph E. Kersey and Merreta Kersey that at the time of the accident Merreta Kersey was driving the automobile with the permission of Ralph E. Kersey and her mother; that as a result of the automobile accident Merreta Kersey, Joyce Kersey, and James Kersey incurred injuries resulting in medical expense in a stated sum; and that the defendant Ralph E. Kersey claims an interest in the policy of insurance under its medical payment coverage for the amount of medical expenses.

It was also stipulated that Gregory Beavers sustained injuries by virtue of the accident which resulted in his instantaneous death and the funeral expense of $500 was paid by Dale O. Beavers personally; and that Merreta Kersey contends that the plaintiff is obligated to defend actions arising out of said accident brought against her.

The plaintiff's amended petition denied that Ralph E. Kersey and Dale O. Beavers had an interest in the insurance policy under its medical payment coverage, or that Dale O. Beavers had an interest in the insurance policy by reason of any obligation of the insurance company to indemnify Merreta Kersey in the event a judgment was rendered against her for damages resulting from the death of Gregory Beavers; further denied that it had an obligation to defend actions arising from the death of Gregory Beavers out of the accident; and further denied that Merreta Kersey was driving the automobile with the permission of Ralph E. Kersey and his wife at the time of the accident.

The answer of the defendants Ralph E. Kersey and his wife, insofar as need be considered, alleged that the Oldsmobile was operated by Merreta Kersey at the time of the accident as a family car of Ralph E. Kersey and kept and maintained for the use of the family, including Merreta Kersey; that Merreta Kersey was driving said automobile with the implied consent and permission of Ralph E. Kersey; that the plaintiff accepted

the defense of the claim of Dale O. Beavers and assured Ralph E. Kersey that the plaintiff would defend any claim against him as the insured by the administrator of the estate of Gregory Beavers, deceased, and would extend coverage under the policy to the named insured; and that in reliance upon the plaintiff's agreement to defend and extend such coverage, Ralph E. Kersey did not investigate the accident. The answer further alleged that the agents of the plaintiff informed Ralph E. Kersey and his wife that it was liable for medical payments and funeral expenses coverage.

The answer of the defendants Merreta Kersey, Joyce Kersey, and James Kersey, through their guardian ad litem, denied generally the allegations of the plaintiff's amended petition; denied that the plaintiff was without an adequate remedy at law; alleged that the automobile operated by Merreta Kersey at the time of the accident was the family car of the defendant Ralph E. Kersey and kept and maintained for the use of said family, including Merreta Kersey; and alleged that Merreta Kersey was driving and operating said automobile at the time of the accident with the implied consent and permission of the defendant Ralph E. Kersey.

The answer of the defendant Dale O. Beavers denied that the plaintiff was without an adequate remedy at law; and denied all of the allegations contained in the plaintiff's amended petition not admitted.

For convenience we will refer to the State Farm Mutual Automobile Insurance Company, a corporation, as the plaintiff; to the defendants as their names appear in the record; and to the 1952 Oldsmobile automobile as the Oldsmobile.

The defendants' assignments of error pertinent to this appeal are as follows: The trial court erred in finding that Merreta Kersey did not have implied permission to drive said automobile at the time of the accident; and erred in finding that the defendants should be

excluded from any and all interest of the medical payments coverage in the plaintiff's insurance policy.

There are certain established rules of law pertinent to the instant case, as follows.

When a proceeding under the Uniform Declaratory Judgments Act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending. § 25-21,157, R. R. S. 1943. See, also, Hawkeye Casualty Co. v. Stoker, 154 Neb. 466, 48 N. W. 2d 623.

Where the record in a civil case shows that a law action was tried to the court without a jury and the record discloses no protest or objection thereto on the part of a litigant, and no application by him for a jury to try the issues, this court will presume that a jury was waived. Davis v. Snyder, 45 Neb. 415, 63 N. W. 789.

"The findings of a court in a law action in which a jury is waived have the effect of a verdict of a jury and will not be disturbed on appeal unless clearly wrong. * * * In such a case, it is not within the province of this court to resolve conflicts in or to weigh evidence. If there is a conflict in the evidence, this court in reviewing the judgment rendered will presume that controverted facts were decided by the trial court in favor of the successful party and the findings will not be disturbed unless clearly wrong." Dunbier v. Stanton, 170 Neb. 541, 103 N. W. 2d 797.

"In considering sufficiency of the evidence to sustain a verdict or judgment rendered by a court in a case where a jury is waived, the evidence must be considered most favorably to the successful party, any controverted fact resolved in his favor, and he must have the benefit of every inference reasonably deducible from the evidence." Dunbier v. Stanton, *supra.* See, also, Granger v. Byrne, 160 Neb. 10, 69 N. W. 2d 293; Reynolds v. Knott, 164 Neb. 365, 82 N. W. 2d 568.

The record shows that on March 19, 1957, Ralph E. Kersey, as plaintiff, brought an action in the district court for Buffalo County against the State Farm Mutual Automobile Insurance Company, a corporation, defendant, to recover medical expenses under the provisions of a policy of insurance issued to the plaintiff by the defendant.

On February 19, 1957, Dale O. Beavers, administrator of the estate of Gregory Beavers, deceased, brought an action against Merreta Kersey and Ralph E. Kersey in the district court for Buffalo County for damages resulting from negligence on the part of Merreta Kersey in operating the automobile owned by Ralph E. Kersey resulting in the death of Gregory Beavers, a minor.

It was stipulated by the parties that on August 31, 1956, at the time and place of the accident, Merreta Kersey, daughter of Ralph E. Kersey and Jessie Kersey, was driving the 1952 Oldsmobile, and the following persons were riding in said automobile: James Kersey, Joyce Kersey, and Gregory Beavers.

The record discloses that Ralph E. Kersey is the pastor of the First Christian Church in Elm Creek, and that he lives in Elm Creek, Nebraska. He and his wife, Jessie, have five children, a son Robert Kersey who was home on furlough at the time of the accident, a daughter Erma who lives at Blair, Merreta Kersey who was born March 28, 1941, and Joyce and James Kersey, twins, born December 19, 1948. Reverend Kersey owned a 1952 Oldsmobile sedan and a policy of insurance issued by the plaintiff.

On August 31, 1956, Reverend Kersey went to Lexington to see a doctor. He and his wife left home about 1:30 or 2 p.m., and were driven to Lexington in the automobile of their son Robert. When he left home, Reverend Kersey left his Oldsmobile in the driveway, and inadvertently left the keys in the ignition switch. Normally he did not leave the keys in the car. While Reverend and Mrs. Kersey were at Lexington, Merreta

took the Oldsmobile and went for a drive in the country, taking the twins and Gregory Beavers, a playmate of the twins and the minor son of Dale O. Beavers. On a country road north of Elm Creek the Oldsmobile overturned, seriously injuring the three Kersey children and killing Gregory Beavers. Reverend and Mrs. Kersey heard of the accident when they returned to Elm Creek.

Reverend Kersey testified that prior to August 31, 1956, he had given Merreta lessons in driving the Oldsmobile. He permitted her to drive on country roads, which he referred to as "back roads," when he was with her on visits to members of his congregation. She drove in his presence 10, 12, or maybe 18 times. Reverend Kersey further testified that on July 4, 1956, when he, his wife, Merreta, and the twins were vising in Overton, Merreta asked to drive the Oldsmobile to visit a girl friend a few blocks from where they were visiting. She was granted permission to do so. On another occasion in 1955, while the Kerseys were visiting relatives in Smithfield, Missouri, Merreta was granted permission to drive the car across the village and back.

Reverend Kersey further testified that after hearing about the accident he and Mrs. Kersey went to the hospital where they found Merreta to be seriously injured and unconscious, and the twins were also seriously injured. On the morning after the accident a representative of the plaintiff insurance company contacted Reverend Kersey, as did also Rex Gray, an agent of the plaintiff from whom Reverend Kersey purchased the insurance policy. Reverend Kersey testified that the representative, Frank J. Roubicek, said he was an adjuster for the insurance company. There was a conversation with Gray and the adjuster at that time. Gray said they were sorry that the accident happened, but that there was nothing to worry about so far as the finances were concerned because Reverend Kersey was covered by insurance, and the medical bills would be taken care of.

Reverend Kersey further testified that the adjuster also took part in this conversation. The adjuster then said that they would like to make a report and had to have it in writing. Then Reverend Kersey, Mr. Gray, and the adjuster went out on the veranda on the north side of the hospital and sat down. A statement was taken, which was signed by Reverend Kersey. Reverend Kersey testified that he believed the adjuster called him on the telephone later while he and Mrs. Kersey were eating, and asked if they could have a few minutes of their time. Reverend Kersey told the adjuster that they were greatly disturbed over the accident, and the adjuster said: "Well, we just want to help you with this so you can get your insurance," and then said that they were coming out to the hospital. They went to the hospital with attorney Tye, by permission of Reverend Kersey. At the time they arrived, Reverend Kersey told them that the children were gravely ill and that he and Mrs. Kersey were very tired and wanted to be with the children. Mr. Tye expressed his sympathy with reference to the accident, and stated that he had come to take statements with regard thereto, so that Reverend Kersey could obtain his insurance. A place was found where it was suitable to take the statements of Reverend Kersey and his wife who was present.

Reverend Kersey testified further with reference to his general health, stating that he had had a spinal operation in July 1946 and had been compelled to wear a brace since that time, and that he could not properly relax or sleep; that he was extremely tired and nervous at the time Mr. Tye asked the questions, but that in his profession he encountered death, accidents, and sickness, and through the years he had learned to control his nervousness and could sympathize without showing emotion; and that his wife had been ill with what was known as a "heart block."

Reverend Kersey further testified that approximately

3 weeks after the accident he was notified by the plaintiff insurance company that it was not going to make payment under the provisions of the insurance policy; that plaintiff never notified him that it was not going to defend him in the action now pending, brought by Dale O. Beavers, administrator of the estate of Gregory Beavers; and that he had made no investigation of the accident to protect himself because the plaintiff said it would defend the action.

Merreta Kersey testified that she remembered driving the Oldsmobile on August 31, 1956; that she was at home that day with the twins; that the Oldsmobile was on the driveway; and that she had not asked her parents that day about driving it. She further testified that she took the Oldsmobile and the three children who were seated in the back seat of the car and went for a little ride in the country; that her father had been teaching her to drive the Oldsmobile for over a year; and that the accident occurred on a country road. She testified to driving the Oldsmobile in Overton and in Smithfield, Missouri, in the driveway at home, and on country roads a number of times.

Frank J. Roubicek, a claims service representative of the plaintiff, testified that he became acquainted with Reverend and Mrs. Kersey the morning of September 1, 1956, which was occasioned by a report of the accident of August 31, 1956, he received from Rex Gray, an agent of the plaintiff at Kearney; that he met Reverend Kersey in the hall at the hospital and talked to him briefly; that they then went outside the hospital and found some chairs; and that at that time he informed Reverend Kersey that he was an authorized representative of the plaintiff, and explained to him the purpose of his mission which was to accumulate facts with reference to this particular accident. He asked Reverend Kersey what he knew about the accident, and Reverend Kersey volunteered such information as he had about the accident. He also stated that he had not given

permission to Merreta to drive the car. At that time this witness took a statement in writing from Reverend Kersey. Reverend Kersey read the statement and signed it, using his own pen. This witness further testified that Reverend Kersey was quite composed, as opposed to being distraught, and his conversation was coherent.

Rex Gray testified that when they contacted Reverend Kersey at the hospital he was as near normal as a person could be, and had no difficulty in talking or visiting with them, or in answering questions. During the conversation had with Reverend Kersey in which the written statement was made, Roubicek presented Reverend Kersey a non-waiver agreement with the explanation that it was to enable the plaintiff to continue the investigation, and both Reverend and Mrs. Kersey signed this instrument.

Later the same day, shortly after noon, Mr. Tye asked questions which were answered by Reverend and Mrs. Kersey and recorded by a court reporter. This reporter testified that at the time he recorded the statements, Reverend Kersey answered the questions readily, calmly, and quietly. He further testified that after the statement was taken the court reporter again saw Reverend Kersey in the hospital and remarked to him that he must have very strong faith in his religion to take the tragedy that had happened as well as he did, and Reverend Kersey replied that he had very great faith.

Mr. Tye testified about going to the hospital to take the statements of Reverend and Mrs. Kersey; that he talked to them a few minutes prior to taking the statements and did not notice anything unusual about them or in their way of answering his questions; and that they made no complaints about making the statements.

Mr. Roubicek and Mr. Gray testified that after leaving the hospital they went to Elm Creek and had a conversation with Dale O. Beavers, the father of the boy who was killed. Mr. Beavers testified that in the conversation Mr. Roubicek stated that all expenses would

be paid, including flowers and burial clothes. Mr. Roubicek testified that he told Mr. Beavers the kind of expenses the company paid if the loss was within the coverage, and that he was there to complete the investigation. Mr. Gray testified that Mr. Roubicek made the statement that he was investigating and attempting to determine if the policy was in force.

After a full report was made to the plaintiff, Roubicek, together with Gray, went to the Kersey home about 2 weeks after the accident and advised them that no coverage would be extended. Later the Kerseys employed a law firm, and an attorney of that firm had conversations with Roubicek with reference to the reason for the denial of coverage. The plaintiff wrote a letter setting forth its position in this matter. There was further correspondence with reference to this matter that need not be set out.

On March 23, 1957, an attorney, at the request of Mr. Tye, took a statement which was recorded by a court reporter, in which Reverend Kersey referred to two occasions when he had permitted Merreta to drive the car alone, and in which he recalled that when he gave the statement at the hospital he did not include these facts. These two occasions have heretofore been mentioned.

The statement taken by Roubicek at the hospital, signed by Reverend Kersey, in substance was to the effect that a year or so prior to the accident Reverend Kersey had let Merreta drive the Oldsmobile while he was in it, in order that she might learn to operate it; that prior to August 31, 1956, Merreta had never driven the Oldsmobile without her father being in the car; that when he left to go to Lexington, the car was in the driveway and the keys were in it; that Merreta did not have his permission to drive the Oldsmobile that afternoon; that she had never driven the car alone; that his wife never gave permission to Merreta to drive the

Oldsmobile; and that he had read the page and the statements made therein were true.

In the statement made on Saturday, September 1, 1956, wherein Reverend Kersey was interrogated by attorney Tye, he stated that when he left Elm Creek he inadvertently forgot to take the keys out of the Oldsmobile; that Merreta would occasionally drive with him beside her on a country road and maybe a block or two in the village of Elm Creek and had been doing that for about a year; that he had not permitted her to drive the car unassisted; that he had never let her take the wheel on the highway or even on a country road; that she was never permitted to use the car alone in any way; that it had not been her habit or custom, or the custom of the family to let her use the Oldsmobile; that frequently she would ask to drive the Oldsmobile but that he always answered "no"; that on the day of the accident she did not say anything about driving the automobile, and he had no idea that she would; that she did not have a driver's license or a learner's permit; and that she was about 15½ years of age. The foregoing is the substance of the statement of Reverend Kersey. Mrs. Kersey's testimony was to the same effect with reference to Merreta driving the Oldsmobile.

The policy of insurance involved in this case provides in part: "Coverage C - Medical Payments. To pay reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, dental, ambulance, hospital, professional nursing and funeral services, and prosthetic devices, to or for each person who sustains bodily injury, caused by accident, while in or upon, entering into or alighting from, or through being struck by the automobile, provided the automobile is being used by the named insured or his spouse if a resident of the same household, *or with the permission of either.*" (Emphasis supplied.)

Subsection (3) of section 60-407, R. S. Supp., 1955, provides in part: "Minors who have not attained the

age set forth in subsection (1) of this section but are over the age of fourteen years, except within metropolitan, primary, and first-class cities, may be issued, by the county treasurer, a limited permit to drive a motor vehicle to and from the school building where he attends school, by the nearest highway or street from his place of residence, if such child lives a distance of one and one half miles or more from such school. Such limited permit shall be used for the sole purpose of transporting such minor to attend school; * * *."

Subsection (5) of section 60-407, R. S. Supp., 1955, provides in part: "Any person who shall have attained the age of fifteen and one half years or more may obtain a learner's permit from an examiner which shall be valid for a period of six months and he may operate a motor vehicle over the highways of this state if he is accompanied at all times by a licensed operator who is at least twenty-one years of age and who is actually occupying the seat beside the driver."

There was no compliance with the above section of the statutes as it relates to Merreta Kersey.

"The permission required to bring an additional insured within the protection of an omnibus clause may, as a general proposition, be express or implied, and the omnibus clause may expressly provide, or be required by statute to provide, that the permission of the named insured may be express or implied. Where the word 'permission' or 'consent' appears in the omnibus clause without definition, it is construed to include implied permission, and this implication may be a product of the present or past conduct of the insured. Implied permission is not confined alone to affirmative action, and is usually shown by usage and practice of the parties over a sufficient period of time prior to the day on which the insured car was being used." 5A Am. Jur., Automobile Insurance, § 94, p. 92.

In 6 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), § 3943, p. 614, it is said: "Per-

mission or consent may be implied. Thus permission is not limited to that expressly granted, but may arise and be implied from a course of conduct pursued with knowledge of the facts for a considerable time, as where there is a prolonged, frequent, and habitual use with the knowledge and acquiescence of the owner, which must be regarded as a 'permission' within the policy. But no implication arises from use on a specific occasion for a specific purpose by the insured or one of his household of permission to others to operate the automobile even for a use closely connected and related in purpose and time, and permission to use the automobile for a given purpose does not imply permission to use it for all other purposes."

In Bekaert v. State Farm Mutual Automobile Ins. Co., 230 F. 2d 127, eliminating the factual situation, the court said: "* * * such Nebraska cases as there are in the omnibus-clause field, appear to make the question of permission on the part of the named insured to the use of the automobile by another at the time of an accident one that ordinarily is to be resolved, in its express or implied existence, as a matter of actual and found fact. Cf. Wigington v. Ocean Accident & Guarantee Corp., 120 Neb. 162, 231 N. W. 770; Andrews v. Commercial Casualty Ins. Co., 128 Neb. 496, 259 N. W. 653; Witthauer v. Employers Mutual Casualty Co., 149 Neb. 728, 32 N. W. 2d 413.

"In each of these three cases, as examination will show, the Nebraska Supreme Court primarily engaged in testing the sufficiency of the evidence in the record to sustain the factual appraisal and general finding of permission or lack of permission which the trial court had made." See, also, Beatty v. Hoff, 382 Pa. 173, 114 A. 2d 173, and cases cited therein.

In the case of Witthauer v. Employers Mutual Casualty Co., 149 Neb. 728, 32 N. W. 2d 413, it appears that there was an accident allegedly caused by the driver of a truck owned by Paxton-Mitchell Company and causing

personal injuries. Paxton-Mitchell Company appealed and a judgment against it was reversed and the cause dismissed. Thereafter the plaintiff brought an action against the defendant as insurer of Paxton-Mitchell Company. The evidence disclosed that one Gryva was the regularly assigned driver of a particular truck owned by his employer, the Paxton-Mitchell Company. On one working day he was on a mission for the employer, and returned from that trip too late to order one of the hot lunches which the company prepared and provided for its employees. He then drove the truck to a cafe some blocks away for lunch, and had an accident while returning from his lunch. This court held that no permission, express or implied, was shown, and refused to imply permission from the fact that the employee had been allowed to be in charge of the truck and to use it for certain purposes. This court stated the material question to be, "was the 'actual use' of the truck at the time of the accident 'with the permission of the Named Insured,' " and held that it was not.

There is no contention in the instant case relating to express permission given by Reverend Kersey to Merreta Kersey to drive the Oldsmobile. Consequently, the question that arises from the facts is whether or not Merreta Kersey had implied permission to drive and use the Oldsmobile.

It appears from the evidence that there is no basis for the implication of permission for Merreta Kersey to drive the automobile without adult company, without supervision, and without asking whether she might drive the Oldsmobile.

We believe, from the evidence adduced, that the trial court based its decision on ample evidence to show that Merreta Kersey lacked implied permission to drive the Oldsmobile.

In the light of the evidence and the authorities heretofore cited, we conclude that other matters raised by the defendants need not be determined, and that the judg-

ment of the trial court should be and is hereby affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.