HAROLD H. ARNDT, ADMINISTRATOR OF THE ESTATE OF SHARON ARNDT, APPELLEE, v. CLYDE DAVIS ET AL., APPELLEES, IMPLEADED WITH AETNA CASUALTY AND SURETY COMPANY, GARNISHEE-APPELLANT.

163 N. W. 2d 886

Filed January 17, 1969. No. 37033.

Maupin, Dent, Kay, Satterfield & Gatz, Donald E. Girard, and Gary L. Scritsmier, for garnishee-appellant.

Baskins, Baskins & Schneider, for appellee Arndt.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and MORAN, District Judge.

NEWTON, J.

This is a garnishment proceeding. One Clyde Davis was employed by Armour & Company as an outside salesman. In his capacity as salesman, Armour & Company furnished him with an automobile. Davis was offered a contract pertaining to the use of the automobile whereby he could, if he so elected, maintain full-time possession of the automobile and use it for personal as well as business purposes. If he used it for personal purposes, he was to be assessed with certain minimum charges for such use. On the other hand, he could elect not to use the automobile for his personal use and, if he so elected, the automobile was to be retained at the headquarters point of the company during all nonbusiness hours except when Davis was traveling overnight away from the headquarters point. Davis elected the second alternative and signed a contract accordingly.

On September 5, 1962, Davis was in Broken Bow, Nebraska, on the business of his employer. That evening, after working hours, he became intoxicated and made use of the automobile for social purposes. Sharon Arndt, plaintiff's decedent, was a guest passenger in the automobile. An accident occurred and she was killed. The administrator of her estate brought action against Davis and his employer Armour & Company. The case was dismissed as to Armour & Company on the ground that Davis was not acting within the scope of his employment at the time of the accident, but judgment was obtained against Davis.

Armour & Company carried automobile insurance on the fleet of automobiles used by it with the defendant Aetna Casualty and Surety Company. The policy contained an omnibus clause as follows: "The unqualified word 'Insured' includes * * * (2) under Coverages A and B, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, *provided the actual use of the automobile is by the named Insured or with his permission* * * *." (Emphasis supplied). The primary question for decision is whether or not under this insurance policy defendant is liable to the plaintiff for payment of the judgment against Davis. In other words, was Davis, at the time of the accident, an insured under this policy? The trial court ruled that defendant was liable and entered judgment accordingly.

There is a considerable volume of law dealing with the interpretation of omnibus clauses such as the one presented in this case. It appears, generally speaking, that three different rules have been followed. The first is the so-called strict or conversion rule to the effect that the exact use of the automobile at the time and place of the accident must have been with the express or implied permission of the employer. The second is the moderate or minor deviation rule which permits recovery when the deviation from the permission

granted is of a minor nature. The third is the liberal or initial permission rule, to the effect that if permission to use the automobile was initially given, recovery may be had regardless of the manner in which the automobile was thereafter used. Proponents of this rule justify it on the ground that it is good public policy to protect persons injured in automobile accidents against uninsured motorists. They further justify the rule on the theory that the purpose of the omnibus clause is to broaden the coverage of the policy to cover all persons operating the insured automobile with the knowledge and consent of the insured owner and insist that once the owner has placed the automobile in the possession of the driver and consented to his operating the automobile, any deviation from the purposes for which the automobile was entrusted to the operator is immaterial. The first two rules mentioned appear to limit the insurer's liability primarily to the liability of the insured. The third or liberal rule goes beyond this and holds the insurer liable even in cases where the owner is not liable on the theory of respondeat superior, family purpose doctrine, etc. See Annotation, 5 A. L. R. 2d 600.

In regard to Nebraska law, it does not appear that any one rule has been strictly adhered to, but at the outset it should be recognized that resort for the determination of such cases need not be had to the Nebraska Motor Vehicle Safety Responsibility Act which, under certain circumstances, renders the insured liable when the motor vehicle is used by another with the express or implied permission of the insured. The word "permission" found in the ordinary omnibus clause is generally construed to include implied permission. See, 7 Am. Jur. 2d, Automobile Insurance, § 113, p. 425; State Farm Mutual Automobile Ins. Co. v. Kersey, 171 Neb. 212, 106 N. W. 2d 31. The statute is not always applicable and in any event, in view of the generally accepted definition of the word "permission" to include

implied permission, the omnibus clause and the statute are synonymous.

In the case of Witthauer v. Employers Mutual Casualty Co., 149 Neb. 728, 32 N. W. 2d 413, an employee who had deviated from the scope of his employment to the extent of driving his employer's truck to a cafe for lunch was ruled not to be covered by the omnibus clause contained in the employer's insurance policy. This case appears to have followed the strict or conversion rule.

In State Farm Mutual Automobile Ins. Co. v. Kersey, *supra*, the owner's daughter, who was a minor without an operator's license, had frequently requested permission to drive the family automobile and had been refused on all but two occasions. She was not specifically instructed not to drive the automobile, but knew that permission for her to do so was usually denied. She took the automobile and an accident ensued. In this case the court said that since neither express nor implied permission had been given the daughter to drive the automobile, she was not covered by the omnibus clause in her father's insurance policy. Here, too, the strict rule was followed.

In Protective Fire & Cas. Co. v. Cornelius, 176 Neb. 75, 125 N. W. 2d 179, an automobile dealer permitted an employee who was considering buying an automobile from his employer to take the automobile to work on it and try it out. The employee or prospective purchaser permitted his friend to drive the automobile and he rode with her. An accident occurred. The court held that although the friend had not been granted permission to use the automobile that the employee or prospective purchaser being in the automobile at the time of the accident was nevertheless using the car regardless of who operated the automobile and held the owner's insurance company liable under the omnibus provision. In this case, liability was based primarily upon the provisions of the Nebraka Motor Vehicle Safety Responsibility Act. It would appear that the same re-

sult would have been obtained had consideration been confined to the omnibus clause.

In the case of Metcalf v. Hartford Acc. & Ind. Co., 176 Neb. 468, 126 N. W. 2d 471, a corporation was the owner of the insured automobile. It was understood that the president of the company also used the automobile at times for personal and family uses. The president permitted his son to use the automobile but specifically instructed him that he was not to permit anyone else to operate it. The son let a friend drive the automobile and an accident occurred. The court stated that the words "use" and "actual use," when used in the omnibus clause of an insurance policy, would be treated as synonymous terms and further stated that a person who assists the user of an automobile in a permitted use by taking over the manual operation of the automobile is an additional insured within the meaning of the omnibus clause.

In the case of Farm Bureau Ins. Co. v. Allied Mut. Ins. Co., 180 Neb. 555, 143 N. W. 2d 923, it is stated that this court is committed to a broad rather than a narrow construction of the word "permission" and to a liberal construction of the omnibus clause to effectuate its purpose.

It can readily be seen that these Nebraska cases are not exactly in agreement, but it does appear from the later cases, namely the Cornelius, Metcalf, and Farm Bureau Ins. Co. cases that Nebraska is committed to the liberal or initial permission doctrine. Is that doctrine applicable under the facts of the present case or should an exception be noted due to the contract pertaining to the use of the automobile entered into between employer and employee? As a general rule, it is held that where a motor vehicle is used in violation of the express instructions of the owner-employer, the automobile is not being used with the express or implied permission of the insured owner-employer and the employee is not covered by the omnibus clause. See, 7 Am. Jur. 2d,

Automobile Insurance, § 124, p. 443; Annotation, 5 A. L. R. 2d, § 20, p. 651. Were we to so hold in the present action, we would be obliged to deny recovery from the defendant insurance company. It appears, however, that to deny such recovery and to hold in accordance with the foregoing rule of law would require a definite violation or qualification of the liberal or initial permission rule, for, in the present instance, Davis had initial permission to operate his employer's automobile. The contract that he entered into with his employer is obviously directed primarily to the use of the automobile when Davis was in the area of his employer's headquarters point. Nevertheless, the terms of the contract are broad in nature and would appear to cover the use of the automobile even when Davis was out on the road, away from the headquarters point overnight. It might be pertinent to consider the fact that even had Davis elected to sign the alternative contract permitting his personal use of the automobile, neither the insurance coverage nor the premium paid would have been altered in the least and the liability of the defendant insurance company would be clear. We then have a situation where the insurer is attempting to avoid liability by virtue of a circumstance that was not related to the issuance of the policy, the provisions it contained, or the premium charged.

Under defendant's theory, if it be accepted in a strict sense, at the end of the business day in Broken Bow, Davis would have had to leave the car parked adjacent to the last business house called upon. He would have had to walk or secure other transportation to his hotel or motel. He would have been obliged to do likewise were he to patronize a cafe, or to go to an evening show or other entertainment, or to attend church on Sunday morning, or to call at the home of a friend or acquaintance, or to do many other things that are normal, acceptable, and sometimes necessary, and which employers of salesmen who are out of town overnight generally

expect their employees to use the employer's automobile for. Davis, in the present instance, was obviously using the automobile for social purposes and the fact that he may have been on a party where he and others may have become intoxicated has a tendency to color the situation. Yet, the, circumstances are really no different than would have existed had he, while having breakfast on a Sunday morning, observed an elderly, attractive, but somewhat crippled lady leaving the hotel on her way to church and volunteered to drive her to church, and had an accident either going to or coming back from the church. He would be similarly deviating from the strict terms of the contract that he had entered into with his employer. Not only is it highly unlikely that his employer intended such strict adherence to the terms of the contract, but to so construe it in the case of an employee who is out of town overnight with no other means of transportation except for his employer's automobile would verge on the, impractical and the ridiculous. We, therefore, remain unconvinced that in this case we should either reject or qualify the "liberal" or "initial permission" rule heretofore adopted by this court.

In Konrad v. Hartford Accident & Indemnity Co., 11 Ill. App. 2d 503, 137 N. E. 2d 855, it is said: "An employee, to whom truck was assigned by employer on continuous basis without expectation he would return truck or truck keys to employer at end of working day about 5 p.m., was driving truck with 'permission' of employer, within automobile liability policy provision including as an insured any person using truck with permission of employer as named insured, when he was involved in collision causing injury to another person while driving truck after midnight for other than business purposes, even though employer had told him not to use truck for other than business purposes, and employee was an additional insured under policy, and fact that employee had taken truck to his home at about 5 p.m.

and had driven downtown after supper and returned home with truck at about 9:30 p.m. did not constitute effective termination or cut-off of permission. * * *

"Under automobile liability policy provision that policy shall insure person named therein and any other person using or responsible for use of motor vehicle with permission of insured, or under statutory omnibus clause, any use of vehicle made by person who received an unterminated permission to use motor vehicle is with permission though such use was not contemplated by named insured when he parted with possession of vehicle and such use constitutes a deviation from the permission (Ill. Rev. Stats. 1951, ch. 95½, § 58k)." See, also, Hanover Insurance Co. v. Franke, 75 N. J. Super. 68, 182 A. 2d 164.

Defendant further contends that attorney's fees cannot be allowed plaintiff in an action of this nature. We find that attorney's fees were properly allowed in the trial court. See, § 44-359, R. R. S. 1943; Glick v. State Automobile Ins. Assn., 127 Neb. 350, 255 N. W. 57; Metcalf v. Hartford Acc. & Ind. Co., *supra.*

The judgment of the trial court is affirmed and plaintiff is awarded attorney's fees for the services of his attorneys in this court in the sum of $650.

AFFIRMED.