Clyde L. JOHNSON, John Greenway and Audrey Greenway, Appellants,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, Appellee.

No. 4020.

Supreme Court of Alaska.

Oct. 19, 1979.

---

son, glanced off that car, and then struck an oncoming vehicle being driven by John Greenway. Greenway and Johnson were both injured, and commenced personal injury actions against Stacy.

Kallerson's car was covered by a liability insurance policy issued by appellee, the United States Fidelity & Guaranty Company, which was called upon to defend Greenway's and Johnson's personal injury actions. USF&G then brought a separate declaratory judgment action, which is in issue here, in order to determine whether the scope of its insurance coverage on the Kallerson vehicle extended to an accident in which Stacy was the driver.

At issue in this action is the following provision of the insurance policy which is referred to generally as an omnibus clause:

Persons Insured

The following are Insureds under Part I:

(a) with respect to the owned automobile,

(1) the Named Insured and any resident of the same household,

(2) any other person using such automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a)(1) or (2) above . . . .

USF&G's contention is that at the time of the accident Stacy was not an insured within the meaning of the omnibus clause, because he was using the automobile without the permission of Kallerson, the named insured, and thus was not covered by the policy. The superior court rendered a summary judgment in favor of USF&G and discharged it from all liability to the appellants, Johnson and Greenway. They have appealed.

Kallerson lived in Ketchikan. When he left there for a pipeline job on the North Slope, he placed his car in storage in a

John W. Peterson, Ziegler, Cloudy, Smith, King & Brown, Peter R. Ellis, Ellis, Sund & Whittaker, Inc., Ketchikan, for appellants.

Anthony M. Sholty, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER and MATTHEWS, JJ., and DIMOND, Senior Justice.

DIMOND, Senior Justice.

Tom Stacy, age 16 years, was driving Bradford Kallerson's car. He ran into the rear of a car being driven by Clyde John-

warehouse located at the docks. He told his father, John Mott, and a close family friend, Russell Duvall, that they could use his car whenever needed. Kallerson explained in his deposition the broad authority of the two men to use his vehicle:

Q. You did give permission for your father and Russ to use the car?

A. Yes I did.

Q. And what did you tell them with regards to the car?

A. I just told them that if they needed to use the car they could use it.

Q. Did you limit their use of the car in any way?

A. No way. I mean I just told them that if they needed to use the car for something they could use it.

Kallerson later explained the broad discretion he invested in Duvall concerning another person driving the vehicle:

Q. Your testimony is that if Russ or your dad needed the car they could use it?

A. Yeah.

Q. If Russ needed the car in terms of wanting it out at Knudsen Cove would that need encompass him getting someone else to drive the car out there?

A. Well if he thought so I imagine it would, yeah.

Q. For whatever he felt he needed the car for he had the right to use?

A. Yeah. If that was referring to letting Tom Stacy drive the car out there why that's—I would much rather have him drive the car out then [sic] I would the boat. (laughter).

Duvall recognized his unlimited discretion to use the automobile:

Q. Did you ever discuss with Mr. Kallerson the possibility of someone else driving the car?

A. No.

Q. Did he give you any specific instructions either limiting your authority to use the vehicle in any way or prohibiting anybody for its use?

A. No.

Q. Did you pretty much feel that you had the discretion to do with the vehicle as you saw fit and proper?

A. Well as I saw proper, yes.

During the time Duvall used Kallerson's vehicle, he allowed Tom Stacy, a family friend of both Duvall and Kallerson, to operate the car on approximately twelve occasions. The first time Stacy drove the car was prior to receiving his driver's license, accompanied by Duvall. He later drove the car to and from the repair shop, not always accompanied by Duvall. On several occasions, Stacy drove the car to Knudsen Cove, a small boat harbor, to pick up Duvall who had been fishing. The day of the accident, which was the day prior to Kallerson's return to Ketchikan, Stacy drove Duvall in the car to Kallerson's house in order to clean the car. It was evening by the time the car was cleaned and the two had finished socializing by eating and playing pool. Duvall then gave Stacy the keys and Stacy drove Kallerson's car to Stacy's house and parked it there. Later that evening, he was driving the car with some young friends as passengers. The accident, which is the subject of this action, occurred while Stacy was driving out the North Tongass Highway on the way to a friend's house.

In this appeal we are concerned with the correct interpretation to be given the omnibus clause which we have referred to earlier in this opinion. There is no problem as to insurance coverage under such a clause where the named insured is driving the automobile involved in an accident. Nor is there often any problem as to coverage of one to whom the insured has given permission to use the insured's automobile. The problem that does frequently arise, and which has spawned much litigation, is the situation where an accident was caused by a third person who was driving the insured vehicle with the consent or permission of one to whom the named insured had given permission to use the car. That is the situation we have here. Duvall had express permission from Kallerson to use the latter's car. Duvall permitted Stacy to use the car on various occasions. The question is whether Stacy's use of the car at the time

of the accident was "with the permission," express or implied, of Kallerson, the named insured, and was "within the scope of such permission," within the meaning of the omnibus clause in the insurance policy.

The superior court held that, under the circumstances, Stacy's use of Kallerson's car, as permitted by Duvall, would ordinarily be covered by the omnibus clause, so long as such use was for the benefit of Kallerson or Duvall. However, the court found that at the time of the accident Stacy's use of the automobile was not only without express permission from Duvall, but was contrary to at least an implied permission, and in fact, was a prohibited use. Consequently, the superior court held that Stacy was not covered under the omnibus clause, and therefore that USF&G was not responsible for the injuries caused by Stacy's accident.

From the deposition testimony of Kallerson and Duvall, it is clear that Duvall had explicit permission to use Kallerson's car without any restrictions as to such use. It is also clear from such testimony, and from the fact that there was a close relationship among Kallerson, Duvall and Stacy, that Duvall was not prohibited from allowing Stacy to also drive Kallerson's car. The only question is whether, at the time of the accident, Stacy's use of the vehicle was within or outside the scope of permission granted to him.

On the day of the accident, after Duvall and Stacy had cleaned the car at Kallerson's residence, Duvall handed the keys to Stacy, stating that he would call Stacy the next morning so that Stacy could bring the car to the docks from which place the parties would go on a fishing trip. Duvall told Stacy, when he gave him the keys, "Don't monkey with it." Stacy understood that admonition as "not to hot rod and stuff like that." Stacy also said that he had not, in fact, "hot rodded" the vehicle the night of the accident. Duvall did not explain what he meant by telling Stacy not to "monkey" with the car.

The superior court found that Stacy's use of Kallerson's automobile, as permitted by Duvall, would be covered under the omnibus clause of the insurance policy with USF&G. With this we agree. However, the court also held that Stacy's personal use of the car on the night of the accident was contrary to at least an implied prohibition from Duvall, and was in fact a prohibited use. With this aspect of the superior court's decision we disagree.

The basis of our disagreement stems from our belief that an omnibus clause in an automobile insurance policy, such as we have in this case, should be liberally construed so as to effectuate its basic intent, which is to protect the public from damages caused by vehicles operated by persons other than the named insured.[1] This intent has been recognized by our legislature in the enactment of the Alaska Motor Vehicle Safety Responsibility Act, AS 28.20.-010—.640. In its declaration of the purpose of that statute, the legislature has stated:

*Declaration of purpose.* The legislature is concerned over the rising toll of motor vehicle accidents and the suffering and loss inflicted by them. The legislature determines that it is a matter of grave concern that motorists be financially responsible for their negligent acts so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them. The legislature finds and declares that the public interest can best be served by the requirements that the operator of a motor vehicle involved in an accident respond for damages and show proof of financial ability to respond for damages in future accidents as a prerequisite to his

1. The United States District Court for the District of Alaska stated in *Harbor Insurance Co. v. United States Fidelity & Guaranty Co.*, 350 F.Supp. 723, 726 (D.Alaska 1972):

Courts tend to construe omnibus clauses liberally to provide coverage to a person using an automobile owned by the named insured with the express or implied permission of the named insured. This construction is based on the sound public policy to protect the public from vehicles operated by one other than the insured owner.

exercise of the privilege of operating a motor vehicle in the state.[2]

In addition, the legislature has required that broad coverage be included in an omnibus clause of an automobile insurance policy. AS 28.20.440 provides in relevant part:

(b) The owner's policy of liability insurance shall

. . . . .

(2) insure the person named and every other person using the vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the vehicle . . . .[3]

The reasons for statutory provisions requiring broad omnibus clause language have been explained by the Supreme Court of Hawaii. In *Columbia Casualty Co. v. Hoohuli*, 50 Haw. 212, 437 P.2d 99, 103 n.2 (1968), the court stated:

The purpose of expanded insurance coverage through statutory imposition of the omnibus clause is to avoid the loss to innocent parties injured at the hands of otherwise uninsured drivers. The high costs to injured parties and to society of uncompensated injuries caused by automobile accidents has been long recognized. The desire to avoid these costs has in turn given rise to various proposals to minimize or eliminate them, of which the omnibus clause is only one. [Citations omitted.]

In this case we apply the principle that an omnibus clause in an insurance policy, such as the one being considered here, should be broadly construed so as to protect the public from injuries caused by motor vehicles. Kallerson had given Duvall broad and unconditional permission to operate the former's automobile. Kallerson indicated in his deposition that Duvall's permission to

operate the car could encompass the use by some other person at Duvall's direction. Furthermore, Duvall testified in his deposition that he had no specific instructions limiting his authority to use the vehicle or to prohibit anybody else from using it. It follows from this, and the close relationship between Kallerson, Duvall and Stacy, that Duvall could, in turn, grant permission to Stacy to drive the car. *See* Annot., 4 A.L.R.3d 10, 25–29 (1965).

It is true that, in nearly all instances when Stacy operated the car, he was going to and from places designated by Duvall. But deviations by Stacy en route to and from such places were not expressly forbidden by Duvall. For example, on the several occasions that Stacy drove out to meet Duvall at Knudsen Cove, Stacy had not been precluded by Duvall from diverging from the direct route to Knudsen Cove if he chose to do so in order to attend to affairs of his own. From what appears from the record, all that mattered was that Stacy be at the Cove at whatever times Duvall had designated, but without regard to whether Stacy had taken a direct or circuitous route to reach that final destination. The only restriction imposed by Duvall on Stacy's driving of Kallerson's car was his admonition to Stacy on the day of the accident not to "monkey" with it. As we have stated, Duvall did not explain what he meant by that term, and Stacy understood it as meaning not to "hot rod" the car, which he claims he did not do.

We conclude that, within the meaning of the omnibus clause in Kallerson's insurance policy with USF&G, Stacy's use of the automobile at the time of the accident was with the implied permission of the named insured, Kallerson, and was within the scope of such permission.

---

2. AS 28.20.010.

3. The Alaska Motor Vehicle Safety Responsibility Act does not cover every driver of a motor vehicle. Only after a motorist is involved in an automobile accident in Alaska must he demonstrate financial ability to pay possible costs which could be incurred by a subsequent acci-

dent. He may do this either by obtaining issuance of a certificate of self-insurance (AS 28.20.420), or by securing a motor vehicle liability policy containing an agreement or endorsement or necessary certification for proof of financial responsibility for the future under AS 28.20.440.

The judgment of the superior court is reversed.

BURKE, J., not participating.

MATTHEWS, Justice, concurring.

In my view there is a question of fact as to the scope of the permission which Duvall gave Stacy. Stacy's testimony reflects his belief that he was operating the vehicle beyond the permission given him:

Q. Tom, how did you feel about using the Kallerson vehicle the night of the accident. Did you feel you had a right to use it for whatever you wanted on that evening?

A. Well, no not really. . . .

   .    .    .    .    .

Q. Do you feel that Russ Duvall would have minded you using it on that evening if he had known you were going to?

A. He might have, yeah.

Q. And what makes you say that?

A. Well he is—I don't know—he is kind of a person that he worries sometimes quite a bit.

Stacy depo. pp. 76–77.

Because I think a question of fact does exist I would reach the question whether the initial permission rule should be adopted in Alaska. It holds that when a person is given permission to use a vehicle in the first instance, any subsequent use "barring theft or the like,"[1] is a permissive use within the terms of the standard omnibus clause even though the permittee may have ignored the lender's admonitions as to the vehicle's use.[2] In my view this rule best meets the reasonable expectation of a policy holder that those whom he allows to drive his car will be insured; it tends to eliminate lawsuits, such as the present one, which turn on fine, and often petty, factual questions concerning the nature of the limitations[3] on permission granted which, if not followed, were not meant by the named insured to result in a forfeiture of coverage in any event; and it advances the goal that motorists be financially responsible for their negligent acts so that those who are wrongfully injured may receive compensation. I would therefore adopt the initial permission rule as the rule of decision in this case. The question of fact which I believe exists concerning whether Stacy was operating the vehicle in violation of the permission given him would then be irrelevant.

1. *Maryland Cas. Co. v. Iowa Nat'l Mut. Ins. Co.*, 54 Ill.2d 333, 297 N.E.2d 163, 168 (1973); *Odolecki v. Hartford Accident and Indem. Co.*, 55 N.J. 542, 264 A.2d 38, 42 (1970).

2. *See United States Fidelity and Guar. Co. v. McManus*, 64 Ill.2d 239, 1 Ill.Dec. 78, 356 N.E.2d 78, 80 (1976); *Maryland Cas. Co. v. Iowa Nat'l Mut. Ins. Co.*, 54 Ill.2d 333, 297 N.E.2d 163, 168 (1973); *Hull v. Allstate Ins. Co.*, 187 Neb. 130, 187 N.W.2d 650, 651 (1971); *Arndt v. Davis*, 183 Neb. 726, 163 N.W.2d 886, 889 (1969); *United States Fidelity and Guar. Co. v. Fisher*, 88 Nev. 155, 494 P.2d 549, 551 (1972); *Odolecki v. Hartford Accident & Indem. Co.*, 55 N.J. 542, 264 A.2d 38, 42 (1970). *See generally* 5 Loy.U.L.J. 284 (1974).

3. *See, e. g., National Grange Mut. Ins. Co. v. Gervais*, 106 N.H. 36, 203 A.2d 645, 646 (1964) ("would rather not have him take [the] car into Canada"); *Standard Accident Ins. Co. v. Gore*, 99 N.H. 277, 109 A.2d 566, 568 (1954) ("Well, that's all right but please don't use it as a taxi all night"); *Costanzo v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 30 N.J. 262, 152 A.2d 589, 591 (1959) ("not be out running around"); *Liberty Mut. Ins. Co. v. Behringer*, 419 S.W.2d 651, 653 (Tex.Civ.App.1967) ("No you're not taking him for a ride"); or, as here, "Don't monkey with it", Duvall depo. p. 19.