RHONDA S. BARRY, APPELLANT, V. CHRISTOPHER TANNER AND GREATWAY INSURANCE COMPANY, APPELLEES.

547 N.W.2d 730

Filed May 24, 1996.   No. S-94-442.

Daniel P. Chesire and Conal L. Hession, of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Robert D. Mullin, Jr., and Aaron A. Clark, of McGrath, North, Mullin & Kratz, P.C., for appellee Greatway Insurance Co.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

This is an appeal from a judgment of the Douglas County District Court determining that Christopher Tanner was not a permissive user of a vehicle owned by insured Joseph Dervin and dismissing garnishment proceedings against Greatway Insurance Company (Greatway), Dervin's insurer. Rhonda S. Barry appealed this judgment to the Nebraska Court of Appeals, and the matter was transferred to this court upon our own motion. We conclude that Tanner qualifies as an "insured" under the insurance policy of Dervin and, therefore, reverse the judgment and remand the matter to the district court with directions.

## FACTUAL BACKGROUND

On July 1, 1991, Barry was involved in a three-car accident. A vehicle driven by Tanner traveling east on Maple Street in Omaha, Nebraska, entered the 90th Street intersection, where it struck a vehicle driven by Jodie Mosher. As a result of the force of the collision, Mosher's vehicle struck that of Barry, causing property damage and personal injury to Barry. Subsequently, it was determined that the vehicle driven by Tanner, a 1984 station wagon, was owned by Dervin, who had delivered the vehicle to Tanner, a self-employed auto body specialist, for some minor rust repair and paint work. Tanner had

used Dervin's vehicle to go to Kentucky Fried Chicken to purchase dinner and was returning to his auto body shop when the accident occurred.

Barry filed a negligence action against both Tanner and Mosher. Mosher was dismissed from the action, but a default judgment in the amount of $25,000 was entered against Tanner. Tanner was uninsured at the time of the accident, so Barry commenced a garnishment proceeding in district court against Dervin's insurer, Greatway, in an effort to collect the judgment. Barry asserted that Tanner qualified as an "insured" under Dervin's insurance policy due to Tanner's being a "permissive user" of Dervin's vehicle. In answers to garnishment interrogatories, Greatway denied that it held any money, or owed any money, on behalf of the judgment debtor because Tanner was not a "permissive user" of Dervin's vehicle.

At trial before the district court, the evidence established that Dervin was in the business of buying used cars for resale or personal use. Sometimes Dervin would purchase such vehicles on his own, while other times he would purchase vehicles in conjunction with a friend of his, Brian Workman, who also bought and resold used vehicles.

In 1991, Dervin and Workman began to bring some of their vehicles to Tanner for minor repairs prior to resale. When cars were delivered, the keys would be left therein to allow Tanner to move the vehicles if necessary. Tanner never asked permission to use the vehicles for personal use or otherwise, and neither Dervin nor Workman expressly authorized Tanner to drive the vehicles delivered for repair. However, on one prior occasion, Workman had instructed Tanner to meet him at a carlot, drive a vehicle to his shop for repair, and return the vehicle to Workman in repaired condition. On another occasion, Tanner was reprimanded by Workman for sleeping in a van that had been delivered for repair. There is no evidence that either Dervin or Workman ever expressly told Tanner not to drive the 1984 station wagon which had been delivered for repair. Both Tanner and Workman testified that the only substantive discussions between the parties at the time of the delivery of the vehicle concerned rust repair and the timeframe for the repair. Dervin testified that either at the time of the delivery of the

1984 station wagon or on a previous occasion, "[I]t was implied that [Tanner] was not to be using my car for any personal and/or business-related errands." Tanner, on the other hand, testified that he previously had driven both Dervin's and Workman's vehicles with their permission, and he assumed it was acceptable to do so on this occasion.

Based on these facts, the district court found that Tanner did not qualify as a permissive user of the vehicle and that Tanner's use of the vehicle to drive to a restaurant to purchase his dinner was not related to the purposes for which the vehicle had been delivered to him. The garnishment proceeding against Greatway was dismissed, and this appeal followed.

## ASSIGNMENTS OF ERROR

Barry asserts that the district court erred in (1) finding that Tanner did not have permission to use Dervin's vehicle and (2) finding that Tanner's permission to use the car was limited to paint repair and moving the car about the repair shop.

## STANDARD OF REVIEW

Garnishment is a legal proceeding. To the extent factual issues are involved, the findings of a garnishment hearing judge have the effect of findings by a jury and, on appeal, will not be set aside unless clearly wrong. *Watts v. Watts, ante* p. 38, 547 N.W.2d 466 (1996); *Koterzina v. Copple Chevrolet,* 249 Neb. 158, 542 N.W.2d 696 (1996).

On questions of law, an appellate court has an obligation to reach its own independent conclusions. *Watts v. Watts, supra; Koterzina v. Copple Chevrolet, supra.*

## ANALYSIS

Greatway carried standard automobile liability coverage on the vehicle owned by Dervin and driven by Tanner. The liability policy provides coverage for "damages for which an **insured person** is legally liable because of **bodily injury** or **property damage** resulting from the ownership, maintenance or use . . . of a car . . . ." (Emphasis in original.) The omnibus clause in this standard liability policy defined "insured person" as "[a]ny person while using [the] **insured**['s] **car** with [the insured's] permission . . . ."

(Emphasis in original.) It is undisputed that the 1984 station wagon involved in the accident was a covered vehicle under Dervin's insurance policy. The fact that Dervin's vehicle was delivered to Tanner with the keys left therein implies, at a minimum, that Tanner had been granted permission to drive the vehicle for purposes of completing the repair job. The sole issue to be decided is whether there is coverage under the omnibus clause of this standard automobile liability policy, when initial permission to use the vehicle was given, but for a presumably restricted purpose (i.e., rust repair), and the restriction was violated.

There should be no doubt that this court adopted the "liberal or initial permission" doctrine in *Arndt v. Davis*, 183 Neb. 726, 163 N.W.2d 886 (1969). See, also, *Hull v. Allstate Ins. Co.*, 187 Neb. 130, 187 N.W.2d 650 (1971). Prior to adopting the "initial permission" rule, we recognized and considered two other interpretations of an omnibus clause, such as the one presented in this case, in *Arndt v. Davis*, 183 Neb. at 728-29, 163 N.W.2d at 887-88, when we stated:

> It appears, generally speaking, that three different rules have been followed. The first is the so-called strict or conversion rule to the effect that the exact use of the automobile at the time and place of the accident must have been with the express or implied permission of the employer. The second is the moderate or minor deviation rule which permits recovery when the deviation from the permission granted is of a minor nature. The third is the liberal or initial permission rule to the effect that if permission to use the automobile was initially given, recovery may be had regardless of the manner in which the automobile was thereafter used. Proponents of this rule justify it on the ground that it is good public policy to protect persons injured in automobile accidents against uninsured motorists. They further justify the rule on the theory that the purpose of the omnibus clause is to broaden the coverage of the policy to cover all persons operating the insured automobile with the knowledge and consent of the insured owner and insist that once the owner has placed the automobile in the possession of the

driver and consented to his operating the automobile, any deviation from the purposes for which the automobile was entrusted to the operator is immaterial.

We adopted the liberal or initial permission rule. The position of this court on the initial permission doctrine reflects the view that automobile liability insurance is for the benefit of the public as well as insureds. Litigation as to the scope of the permission—the purpose, the time, or place of use—and similar issues should not be permitted or encouraged.

Of the various doctrines dealing with the issues of permission, this court's interpretation has been closest to the "hell or high water" rule. That rule, in *Hull v. Allstate Ins. Co.*, 187 Neb. at 132, 187 N.W.2d at 651, has been stated to be that

"if the vehicle was originally entrusted by the named insured, or one having proper authority to give permission, to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated." 7 Appleman, Insurance Law and Practice, § 4366, p. 308.

In spite of our previous holdings, Greatway relies upon language in the case of *MFA Ins. Companies v. Mendenhall*, 205 Neb. 430, 437, 288 N.W.2d 270, 274 (1980), for the proposition that "permission granted for limited specific purposes on isolated occasions does not imply general permission to use an automobile for purposes wholly unrelated in time, character, or circumstances." Greatway's reliance upon the *Mendenhall* case is misplaced. *MFA Ins. Companies v. Mendenhall, supra*, refers to a situation where no specific permission was granted from the insured to the user of the insured's vehicle, and this court examined the facts to determine whether or not "implied initial permission" was granted by the insured so as to activate coverage under the omnibus clause. The instant case does not involve a situation where there was a lack of "initial permission" from the insured to Tanner and is therefore distinguishable from *Mendenhall*.

In the case before us, there can be no serious dispute that Tanner had initial permission to use the vehicle.

Notwithstanding Dervin's testimony that it was somehow "implied" that Tanner was not to be using Dervin's vehicle for personal or business errands, there is only one logical conclusion to be drawn when Dervin's vehicle was delivered to Tanner for repair with the keys left therein. Tanner had obviously been given initial permission, either express or implied, to move and use the vehicle for purposes of completing the rust repair. The only dispute is whether that permission should be strictly limited to the exact scope of the use expressly or tacitly authorized (i.e., move the vehicle for repair purposes). We find no compelling reasons to constrict our interpretation so rigidly or to alter our consistent application of the initial permission rule. The policy reasons for applying the initial permission rule are as persuasive and viable today as they were 27 years ago when first announced in *Arndt v. Davis*, 183 Neb. 726, 163 N.W.2d 886 (1969).

We hold that where initial permission to use an insured vehicle has been given by one having proper authority to give permission to the person operating it at the time of an accident, for purposes of liability coverage, such operation is with the express or implied permission of the named insured, even though specific or express terms of the permission given were violated. As we stated in *Hull v. Allstate Ins. Co.*, 187 Neb. 130, 187 N.W.2d 650 (1971), where a named insured has given permission to another to operate an insured vehicle, liability insurance coverage ought not to depend on whether the operator is complying with or violating the conditions or terms placed upon his operation and use of the vehicle by the insured.

## CONCLUSION

Accordingly, we conclude that Tanner qualified as an "insured" under the insurance policy of Dervin and, therefore, reverse the judgment and remand the matter to the district court with directions to enter judgment on behalf of Barry and against Greatway in the sum of $25,000, plus interest and court costs as determined by the trial court upon remand.

REVERSED AND REMANDED WITH DIRECTIONS.