(No. 37722.—

DORIS HAYS (CAUDLE), Appellee, *vs.* COUNTRY MUTUAL INSURANCE COMPANY, Appellant.

*Opinion filed September 27, 1963.*

602

CRAIG & CRAIG, of Mattoon, (J. E. HORSLEY and JOHN P. EWART, of counsel,) for appellant.

RYAN and HELLER, of Mattoon, (WILLIS P. RYAN and HARLAN HELLER, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This case turns upon the meaning and application of the "omnibus clause" of a policy of automobile liability insurance, which extends coverage to other persons in addition to the named insured. The plaintiff suffered personal injuries when the automobile in which she was a passenger struck a culvert. She sued the driver, Thomas Hargis, and recovered a judgment for $11,267.50. She then commenced this action upon the judgment against the defendant, Country Mutual Insurance Company, claiming that the driver, Hargis, was an additional insured within the terms of a policy of insurance issued to Stanley Daily, the owner of the automobile. At the close of the plaintiff's case the trial court sustained the defendant's motion for a directed

verdict. Upon appeal, the Appellate Court for the Third District reversed and remanded by a divided vote. The defendant moved to strike the remanding clause, and consented to the entry of judgment against it in the sum of $11,267.50 in the event that the judgment of the Appellate Court should be affirmed. The case is here upon a certificate of importance granted by the Appellate Court.

The clause of the insurance policy in issue extends the liability coverage "to any person or persons while riding in or operating the motor vehicle described in this policy when such motor vehicle is being used for the purpose and in the manner described in this policy  *  *  *. The coverage hereby afforded shall not apply unless the riding, use or operation above referred to be with the permission of the Insured named in this policy, or if such Insured is an individual, with the permission of any adult member of such Insured's family  *  *  *."

It is agreed that neither Stanley Daily, the owner of the automobile and the named insured, nor any adult member of his family, gave express permission for the use or operation of the car by Thomas Hargis. It is also conceded that permission within the terms of the policy need not be express, and that implied permission would suffice to extend the coverage.

The evidence offered by the plaintiff showed that the insured, Stanley Daily, obtained the policy in question to cover the operation of his 1950 Chevrolet automobile for business or pleasure. He lived on a farm ten miles east of the town of Sullivan, Illinois, with his wife, his fifteen-year-old son, Roger Daily, his sixteen-year-old stepdaughter, Eleanor Slover, and two younger daughters, Janet and Aggie. On the evening of November 5, 1955, the three older children wished to go into Sullivan, so that Roger and Janet might see a motion picture and Eleanor might keep a date. Eleanor had obtained a driver's license two or three weeks previously. Roger had no regular license, but

held a farm permit which allowed him to drive between 7:00 A.M. and 7:00 P.M., and he had driven around the farm and on the road in the daytime. Roger testified that after supper Eleanor "asked Father if we could use the car that Saturday night because she's got her license and she never had been to town or drove before by ourselves and she asked him if we could take it to town. There was a hesitation whether he'd let us or not and then he said it would be okay if we took it and parked it on the square and not drive around, just go to the show and come out and go home. He also said at that time Eleanor was to drive." Neither the father nor Eleanor appeared as a witness, and no other testimony was offered as to the terms of this permission.

About 7:00 P.M. the three children left for town with Eleanor driving. The ignition was unlocked and the car was operated without a key simply by turning the ignition switch. In Sullivan, they stopped near the hardware store where Thomas Hargis and his older brother Barry were working. Barry, with whom Eleanor had her date, and Thomas Hargis came out to the car where they conversed. With them was Stanley Guin, a mutual friend of Thomas Hargis and Roger Daily. Thomas Hargis and Stanley Guin had been looking for something to do, and Thomas asked Roger Daily if he could use the car that evening. Roger said that there wasn't much gas in the car; Thomas offered to furnish gas, and Roger said "okay." Thomas returned to the store and Roger parked the car.

Thomas Hargis was a schoolmate of Roger Daily and had visited the Daily home occasionally. Like Roger, he was fifteen years old. He had no driver's license and Roger knew it. Thomas testified that he had driven this car several times, and the previously owned Daily car as well. Stanley Guin, another schoolmate, was fourteen at the time and had no driver's license.

After the conversation, Thomas Hargis went home and

returned with Stanley Guin and another friend to Ralph's Grill. There they met Nancy Marlow and the plaintiff. Nancy said something about getting a car, and Thomas said they had a car they could use. They found the Daily car parked in the square, and Nancy Marlow drove. They first took the friend to his home, and the four (Thomas Hargis, Stanley Guin, Nancy Marlow, and the plaintiff) then drove to the nearby town of Lovington, intending to go to a basketball game. They changed their minds, drove through Lovington, and then began the return trip. At Nancy's request, Thomas Hargis took over the driving. A short while later the car collided with a culvert when, according to Thomas Hargis, the accelerator pedal became stuck and he lost control of the car.

On the defendant's motion for a directed verdict all reasonable inferences are to be drawn in favor of the plaintiff, and all issues of credibility resolved in her favor. We assume, therefore, that the jury might have found that the father, Stanley Daily, did not expressly prohibit operation by all others when he specified that Eleanor was to drive. The direction might have been intended, as plaintiff argues, only to exclude operation by Roger, or to choose between the competing wishes of Eleanor and Roger to drive. We may also assume that the circumstances under which Roger agreed to allow Thomas Hargis to use the car would permit a jury to find that Eleanor tacitly consented by her silence, since the conversation took place in her presence.

Even in this light, the evidence at best establishes that permission was granted by Stanley Daily to Eleanor and Roger for a specified and limited purpose, and that they granted permission in turn to Thomas Hargis to use the automobile for his own general and unspecified purpose. Nothing in the record tends to show that Stanley Daily contemplated any use by Thomas Hargis, or discloses any permissive relationship between them. The claimant under the policy bears the burden of proof on the question of

coverage, and the plaintiff here bore the burden of establishing by a preponderance of the evidence that Thomas Hargis was operating the insured automobile with the permission of Stanley Daily. (See *Soukup* v. *Halmel,* 357 Ill. 576.) This burden she has failed to discharge.

The plaintiff's claim could be sustained only by holding that the insured's permission granted to one user inherently carries with it, without more, a delegation of authority to the permittee to grant permission to a third person to use the vehicle. So to regard the permission granted by the permittee as "the permission of the Insured named in this policy" would constitute a substantial departure from the ordinary meaning of the words of the policy, especially in view of the policy's specific restriction to permission only by "adult members" of the insured's family.

Such a departure from plain meaning is said to be justified in this case by several considerations that favor a liberal interpretation. It is pointed out that no issue of potential liability of Stanley Daily is involved, under principles of vicarious liability or *respondeat superior.* In acquiring a policy with an omnibus clause, it is said, the insured in effect make a gift of coverage to those who use his car. Under the policy he is empowered to extend coverage simply by granting permission to anyone he chooses, without any increase in the premium he pays. So it is said that no interest of the insured is served by a restrictive interpretation of the policy. (*Cf. Baesler* v. *Globe Indemnity Co.* 33 N.J. 148, 162 A. 2d 854, 859 (1960) (dissenting opinion).) The argument of the insurance company that to read the requirement of permission out of the policy would increase its risk is said to be unrealistic in the light of the power of the insured to grant permission to anyone. Generally, it is urged that a liberal interpretation of coverage is consistent with the broad public policy aimed at compensation for traffic victims, which is expressed in safety and financial responsibility laws. As authority for the proposition that

the requirement of permission should not be technically or restrictively interpreted, the plaintiff refers to decisions that hold that coverage is not destroyed when the permittee exceeds the scope of his permission by deviating from the route or purpose for which he was permitted to use the car, so long as an initial permission was in fact granted to that user. See *Konrad* v. *Hartford Accident & Indemnity Co.* 11 Ill. App. 2d 503; *Landis* v. *New Amsterdam Casualty Co.* 347 Ill. App. 560; *Jefson* v. *London Guarantee & Accident Co.* 293 Ill. App. 97. See also *Karton* v. *New Amsterdam Casualty Co.* 280 Ill. App. 201; *Jackson for use of Schaer* v. *Bankers Indemnity Insurance Co.* 277 Ill. App. 140.

Although these arguments have force, they do not justify this court in reading the requirement of permission out of the insurance contract on the ground that it is wholly purposeless, technical, and fortuitous. When the insured purchases extended coverage he seeks to protect those whom he allows to use his car from the risks of financial disaster as he would guard them against danger from mechanical defects. Ordinarily he has no interest in buying protection for those who use his car without permission. The insurer, on the other hand, limits the risk assumed by requiring permission, since usually the insured will use discretion in permitting others to use his car, if only as a matter of self-interest in avoiding damage to his property. As a matter of probability based on experience with policyholders as a group, we cannot say that the limitation to users who have the insured's permission carries no actuarial significance.

Public policy, as indicated by legislative enactments, does not require extension of the insurance contract beyond these interests of the parties and their expressed intention. (*Cf. McCann for use of Osterman* v. *Continental Casualty Co.* 8 Ill.2d 476.) On the contrary, the provisions of the Safety Responsibility Law that require security following an accident do not apply "to the owner of a motor vehicle

if at the time of the accident the vehicle was being operated without his permission, express or implied * * *." (Ill. Rev. Stat. 1961, chap. 95½, par. 7—202.) So too, persons whose driver's licenses have been revoked for failure to pay judgments, may establish financial responsibility by filing a certificate showing insurance covering "the person named therein and any other person using or responsible for the use of said motor vehicle or vehicles with the express or implied permission of said insured." (Ill. Rev. Stat. 1961, chap. 95½, par. 7—317(b)(2).) Present legislative policy thus limits the owner's duty to insure to cases of express or implied permission.

In the light of the purposes of the requirement of permission, the authorities relied upon by the plaintiff are distinguishable. The interests both of the insured and of the insurance company center upon the identity of the permittee, his relation to the insured and his ability and responsibility as a driver. The use to which he puts the vehicle while it remains in his control may be regarded as of secondary importance to the question of coverage. Decisions holding that coverage persists despite a deviation from the permitted scope in route, purpose, or duration of use do not therefore compel the conclusion that coverage should also extend to third persons whom the original permittee has, without authority, allowed to use the car. The rule that initial permission will suffice applies in reason only when that permission was granted to the user sought to be brought within the coverage of the policy.

Of course the named insured may by express authorization delegate to his permittee the power to grant permission to others, and circumstances surrounding the original permission may support an implication of such an authorization. Thus where the permittee is in every practical sense the owner of the car, and the named insured holds title for convenience, the general custody and control of the permittee is usually held to empower him to grant permission to others

within the scope of an omnibus clause, at least in the absence of express prohibition. (See, *e.g., Hinckley* v. *National Surety Co.* 99 N.H. 373, 111 A. 2d 827 (1955); *Fireman's Fund Indemnity Co.* v. *Freeport Insurance Co.* 30 Ill. App. 2d 69; *cf. Norris* v. *Pacific Indemnity Co.* 39 Cal. 2d 420, 247 P.2d 1 (1952).) If the original permittee retains control of the car, but turns over its physical operation to a third person while remaining a passenger, an implied permission has been found in the continued use and control of the original permittee. (See *Standard Accident Insurance Co.* v. *New Amsterdam Casualty Co.* 249 F.2d 847 (7th cir. 1957); *Fireman's Fund Indemnity Co.* v. *Freeport Insurance Co.* 30 Ill. App. 2d 69.) Even where the original permittee is not a passenger, an inference of permission has been sustained where the third person is engaged on some errand or activity for the benefit, advantage, or purposes of the original permittee. (See *Aetna Life Insurance Co.* v. *Chandler,* 89 N.H. 95, 193 Atl. 233 (1937).) A course of conduct, establishing that the original permittee was allowing third persons to drive with the knowledge of the named insured and without his objection, may also support a finding of implied permission. See, *e.g., Odden* v. *Union Indemnity Co.* 156 Wash. 10, 286 Pac. 59 (1930); *Shoup* v. *Clemans,* (Ohio App.), 31 N.E.2d 103 (1939); *cf. Goff* v. *New Amsterdam Casualty Co.* 318 Ill. App. 586.

No such circumstances are revealed by this record. The insured had not given general custody and control, akin to ownership, to Eleanor and Roger; he allowed them to use the car only for a limited and specified purpose. Nothing in the circumstances suggests that if the question had been put to him he would have approved the use of his car for a joy ride by an unlicensed 15-year-old. No member of the Daily family was present as a passenger, and there was no benefit or advantage to Eleanor or Roger. Nothing has been shown to establish a course of conduct by which Thomas Hargis used the car with the insured's knowledge and without his

objection. We are unable to discern any basis to support a finding of permission.

While the matter is one of first impression in this court, the view prevailing elsewhere is in accord. In *Horn* v. *Allied Mutual Casualty Co.* 272 F.2d 76 (10th cir. 1959), the named insured's stepdaughter was given permission to drive the car to high school. She lent the car to a fifteen-year-old friend, an unlicensed driver, to go home on a personal errand. The court found no implied permission for the loan and no coverage under the omnibus clause. In *Anderson* v. *Adams,* (La. App.), 148 So. 2d 347 (1962), the insured's daughter was permitted to drive to high school and to a music lesson one day a week. She lent the car to several classmates to drive around while she returned to school for the afternoon. The daughter's permission was held not to extend coverage. In *Cronan* v. *Travelers Indemnity Co.* 126 N.J.L. 56, 18 A. 2d 13 (1941), the son of the named insured was permitted to take the automobile on a canoeing party. While there, he allowed two other members to borrow the car to buy refreshments. The court held that the trial judge had properly granted an involuntary nonsuit for the defendant insurer, since no authorization to the son to grant further permission to third persons could be implied from the original permission. In *Duff* v. *Alliance Mutual Casualty Co.* 296 F.2d 506 (10th cir. 1961), the son of the named insured lent the car to an intimate friend who had frequently driven it before. Again the court found no permission, express or implied, under the omnibus clause. See *Ewing* v. *Colorado Farm Casualty Co.* 133 Colo. 447, 296 P.2d 1040 (1956); *Cocos* v. *American Automobile Insurance Co.* 302 Ill. App. 442; 7 Appleman, Insurance Law and Practice, 284, sec. 4361 (1962 ed.), and cases collected in Annotations, 160 A.L.R. 1195, at 1210 (1938), and 5 A.L.R. 2d 600, at 643 (1949).

Plaintiff also argues that the defendant is estopped to deny coverage by two actions taken after the accident. First,

in settling with the insured for the damage to his automobile, the defendant company applied the "collision" coverage of the policy, by which the insured was required to bear the first $25 of the loss, rather than the "comprehensive" coverage which provided full indemnity, without deduction, for losses resulting from theft of the automobile. The plaintiff argues that by taking the position that Thomas Hargis was not a thief, the defendant necessarily confessed that he drove with the insured's permission. Without considering whether the plaintiff could raise an estoppel by proof of an inconsistent position taken by the defendant in dealings with another, we cannot agree that every user of an automobile who does not have permission within the meaning of an omnibus clause is necessarily a thief. As a second ground of estoppel, the plaintiff claims that the defendant confessed coverage in the notification filed with the Secretary of State, on the form known as SR-21, under the provisions of the Safety Responsibility Law. It is a sufficient answer to this argument that the form filed stated only that a policy of insurance was in force covering the owner, Stanley Daily. Nothing in the Illinois form used declares that the operator of the car was also covered by insurance. It is therefore unnecessary to decide whether such a confession of coverage, if made, would be conclusive. See *Henthorn* v. *MGC Corp.* 1 Wis. 2d 180, 83 N.W.2d 759 (1957); *Seaford* v. *Nationwide Mutual Insurance Co.* 253 N.C. 719, 117 S.E. 2d 733 (1961).

Finally, the plaintiff presents an argument based upon the grammatical structure of the omnibus provision, designed to avoid the requirement of permission entirely. The first sentence of that provision extends coverage "to any person or persons while riding in or operating the motor vehicle * * *." The second sentence extends coverage to "any policyholder of the company who is insured against" the same perils and also to the Illinois Agricultural Association, any County Farm Bureau in the State, or any organi-

zation affiliated with either. The third sentence declares that the coverage "hereby afforded" shall not apply unless the riding, operation, or use is with the permission of the named insured or an adult member of his family. Invoking a rule of interpretation described as the doctrine of the last antecedent clause, the plaintiff argues that the requirement of permission applies only to the coverage described in the immediately preceding sentence of the paragraph, and not to the coverage described in the first sentence. We find this argument unpersuasive. No sense could be made of a provision which, read as the plaintiff urges, would cover the defendant's regular policyholders and affiliated organizations only if they had permission, but would extend coverage with no permission at all to persons who are complete strangers, both to the insured and to the company. There is no ambiguity in the policy, and we find no need to resort to canons of construction. The judgment of the Appellate Court is reversed, and the judgment of the circuit court of Coles County is affirmed.

*Appellate Court reversed;*
*circuit court affirmed.*