(No. 45259.-

THE MARYLAND CASUALTY COMPANY, Appellant, v. THE IOWA NATIONAL MUTUAL INSURANCE COMPANY *et al.*—(Iowa National Mutual Insurance Company, Appellee.)

*Opinion filed June 4, 1973.*

VANCE I. KEPLEY, of RENO, O'BYRNE & KEP-
LEY, of Champaign, for appellant.

JOHN E. GAMBILL, of ALLEN & KORKOWSKI &
ASSOCIATES, of Rantoul, for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion
of the court:

This action for declaratory judgment was brought by
plaintiff, Maryland Casualty Company, in the circuit court
of Champaign County under the provisions of section 57.1
of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par.
57.1). The issues presented by this appeal are whether
insurance coverage was provided defendant William S.
Horton, in connection with claims made against him by
Charles B. McElhaney and Harold E. Morlan for personal
injuries arising out of an automobile collision, under the
terms of either or both of two liability policies, one issued
by plaintiff and the other by defendant Iowa National
Mutual Insurance Company, hereafter called defendant,
and if by both, which coverage was primary and which
excess. The circuit court directed verdicts against both
insurance carriers and entered judgment holding that the
plaintiff's policy provided primary coverage and the policy
issued by defendant provided excess coverage. Plaintiff
appealed, defendant cross-appealed, the appellate court
reversed the judgment (5 Ill. App. 3d 384), holding that no
coverage was provided Horton by either policy, and we
granted plaintiff's petition for leave to appeal. The facts
are reviewed in detail in the opinion of the appellate court
and will be restated only to the extent necessary to this
opinion.

In view of the fact that the decision of the appellate court relieves both plaintiff and defendant of liability under their respective policies, we consider it advisable to explain why plaintiff sought leave to appeal. From pleadings on file in this court it appears that following the entry of the circuit court judgment plaintiff assumed the defense of the claims made against Horton, disposed of them for sums within its policy limits, and Horton and the claimants Morlan and McElhaney are no longer parties to this appeal. If we were to reverse the judgment of the appellate court holding that defendant's policy did not provide coverage, and affirm the judgment as to plaintiff, presumably plaintiff would seek to recover from defendant the sums which it has expended.

The record shows that plaintiff had issued to Robert E. Smythe, as the named insured, a policy of liability insurance covering the 1968 Buick which was being driven by Horton at the time of the collision. This automobile, which was titled in the name of Robert Smythe and his wife, was one of two automobiles which they owned. The policy contained the following omnibus clause:

> "Persons Insured: Under the liability and medical expense coverages the following are insured:
> (a) with respect to an owned automobile,
> * * *
> (2) any other person using such automobile, with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *."

There was also in force a policy of liability insurance issued by defendant to Donald Horton, the father of defendant Horton, which contained the following provision:

> "Persons Insured: Under the liability and medical expense coverage, the following are insureds:
> * * *
> (b) with respect to a non-owned automobile,
> (1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission \*\*\*."

Robert E. Smythe is the father of Thomas Smythe, who at the time in question was 20 years of age and a student at Southern Illinois University at Carbondale. Although he had previously owned two cars given him by his father, Thomas did not own an automobile in 1968. He was living at his parents' home in Hoopeston, was permitted to use either of the two Smythe family automobiles whenever he wished, and had driven the 1968 Buick on several occasions.

On July 21, 1968, Thomas drove the automobile to a party in Boswell, Indiana, and while there met Horton and John Higgins, both of whom were students at Southern Illinois University, and his friends. Horton lived in Rankin and he and Thomas frequently traveled together between Carbondale and their respective homes. Horton had driven to the party in a pickup truck owned by his father, Donald Horton, and the truck is one of two vehicles described in the policy issued by the defendant. Higgins had driven to the party in his own automobile.

Horton testified that at some time during the evening Thomas Smythe told him they had a new car, a 1968 Buick, and told him that it was owned by either his father or mother, but he did not recall which parent Smythe told him was the owner. At some point during the party Smythe, Horton and Higgins agreed to meet at a gasoline station in Hoopeston and then proceed in one car to Danville for something to eat. As summarized by the appellate court the testimony shows that:

"\*\*\* There was also some conversation about trading automobiles for this trip. Smythe had driven Higgins' Chevrolet around Boswell

earlier in the evening and testified that he liked to drive this automobile because he wanted to impress some young ladies. Accordingly, Higgins asked Horton if he could drive Horton's pick-up truck to Hoopeston and Horton granted him permission to do so. Shortly after Higgins left, however, Horton changed his mind about going to Danville and asked Smythe to stop Higgins and ask him to return the truck. Smythe then got in Higgins' Chevrolet and caught up with him about two miles outside of Boswell. Higgins refused to drive back to the party and proceeded on to Hoopeston.

When the party was over, both Horton and Smythe prepared to leave for Hoopeston. Smythe got into the Higgins vehicle and Horton got into the Smythe Buick. Smythe's testimony indicated that he did not engage in any conversation with Horton about which automobile to drive. Horton, on the other hand, testified that when they left the party Smythe told him that he wanted to drive Higgins' Chevrolet and that Horton should drive the Buick to Hoopeston." (5 Ill. App. 3d 384, 389.)

While being driven by Horton toward Hoopeston, the Smythe automobile was involved in the collision in which McElhaney and Morlan suffered injuries.

Simply stated, without enumerating in detail their specific arguments, it is the contention of both plaintiff and defendant that Horton is not "an insured" under the terms of their respective omnibus clauses. The testimony shows that approximately two years prior to the date of the collision, while Thomas was a senior in high school, he had left a family automobile parked near the school with the keys in it, and one of his fellow students, without his knowledge or permission, had driven it. When his parents learned of the incident Thomas was instructed never to

permit anyone other than a member of the family to use a family automobile. This was the only occasion on which any such instructions were given. The testimony shows that the only exception to the prohibition was that a young man who was a long-time friend and who was "treated as one of the family" was permitted to drive one of the Smythe cars on several occasions.

Horton had met Smythe's father only one time, had never met Mrs. Smythe, and had never previously driven one of the Smythe cars. Thomas had not informed him that his father had ever forbidden him to permit anyone other than members of the family to drive the car and when they left the party Thomas's only comment was that Horton was not to drive over 70 miles per hour or brake too hard. Approximately an hour before he drove the Smythe car Horton had seen a blonde girl drive it around the block. Thomas Smythe testified that earlier in the evening Higgins had moved the car for him because it was too close to a newly blacktopped street and he feared it might be damaged by flying rocks thrown by the spinning wheels of passing vehicles.

Prior to discussing the contentions of the parties on the coverage issues, we consider the argument of defendant that plaintiff is without "standing" to prosecute this appeal for the reason that its notice of appeal sought reversal only of the judgment holding that its policy provided primary coverage and it cannot now seek reversal of the judgment holding that no coverage was afforded Horton under defendant's policy. We hold that the notice of appeal was broad enough to encompass the relief which plaintiff seeks here, and we do not find it necessary to discuss further the contentions of the parties concerning plaintiff's standing or the permissible scope of this court's review. Plaintiff had standing to seek review of the judgment of the appellate court, viable issues remain in the case, and there is no reason shown why we should not decide it on its merits.

It is plaintiff's contention that the appellate court correctly decided that no coverage was afforded Horton under its policy but that it erred in holding that no coverage was provided him under defendant's policy. Defendant contends that the judgment of the appellate court holding that its policy did not provide coverage to Horton should be affirmed, and alternatively that if that portion of the judgment is reversed, this court should reverse the part of the judgment which exonerates plaintiff. Alternatively, each party argues that the issues should have been submitted to the jury.

Although not expressly stated in the trial court's order, colloquy between court and counsel indicates that the court directed the verdict against plaintiff for the reason that the evidence showed as a matter of law that Horton was "engaged on some errand or activity for the benefit, advantage or purposes of the original permittee." (*Hays v. Country Mutual Insurance Co., 28 Ill.2d 601.*) In reversing the judgment, the appellate court, also relying upon *Hays,* said: "As we have noted, the only possible manner in which William Horton could be covered under the omnibus clause of the policy issued by Maryland Casualty is if his driving of the Buick from Boswell to Hoopeston was for the purpose of conferring a benefit on Thomas Smythe. We have held that it was not." 5 Ill. App. 3d 384, at 402.

In *Hays,* upon which the parties, the circuit and the appellate court appear to have relied, the court, after rejecting the contention that initial permission to use the insured vehicle, without anything further, empowered the permittee to authorize another to use it, said, "Of course the named insured may by express authorization delegate to his permittee the power to grant permission to others, and circumstances surrounding the original permission may support an implication of such an authorization." (28 Ill.2d 601, at 608.) The court then hypothesized four factual situations which would support a finding of

implied permission, none of which was present in that case. We do not read the opinion to hold that only in these four situations, and in no other, is there to be found implied permission, and the opinion makes it clear that the circumstances surrounding the original granting of permission may show it to have been sufficiently broad to include the implied authority to permit another to use the insured vehicle. We note, parenthetically, that we have examined the authorities collected at 4 A.L.R.3d 10, 5 A.L.R.2d 600, and 160 A.L.R. 1195, and conclude that in view of the variations in the factual situations presented, and the differences in the reasons stated in support of the decisions, with one exception, nothing is to be accomplished in discussing or attempting to distinguish or reconcile those cases.

In *Hays* reference is made to the dissenting opinion in *Baesler v. Globe Indemnity Co. (1960), 33 N.J. 148, 162 A.2d 854.* In *Baesler* the Supreme Court of New Jersey, in a 4—3 decision, held, as did this court in *Hays*, that when the named insured gives another permission to use his insured automobile, the permittee is not thereby, without more, authorized to allow another individual to use the vehicle, that if he does so, the use by the second permittee is not with the permission of the named insured, but that in each case it must be decided as a question of fact whether the initial grant of permission by the named insured was broad enough to include an implied grant of authority to the permittee to allow another individual to use the automobile, and thus render the latter an additional insured under the omnibus clause of the policy. The 3 members of the court who dissented would have held that the second permittee was covered under the omnibus clause, although the minority position appears to have been in part influenced by the fact that the insured automobile was provided by his uncle, the named insured, for the almost exclusive use of the original permittee.

In the later case of *Odolecki v. Hartford Accident &*

*Indemnity Co. (1970), 55 N.J. 542, 264 A.2d 38,* in a fact situation very similar to that in the case before us, the Supreme Court of New Jersey expressly overruled *Baesler.* In *Odolecki* the named insured-owner gave her son, home from college for the summer, general permission to use the insured car but told him not to let anyone else drive it. He permitted a friend to borrow the car to pick up his girl friend and while on the way to the girl's place of employment the second permittee was involved in a collision. After discussing its decisions in which it had adopted the "initial permission" rule the New Jersey court said: "Although the above policy considerations would seem to dictate a departure from *Baesler,* we are urged that the language of the omnibus clause precludes coverage for a prohibited second permittee. More specifically, defendant argues that the words 'provided the actual use of the automobile is by the named insured *** or with [her] permission' could not include use by Odolecki since Mrs. Zylka had told her son not to let anyone else drive the car. We fail, however, to see the distinction between a case where a first permittee exceeds the scope of permission in terms of time, place, or purpose, and a case where he exceeds the scope of permission in terms of use of the vehicle by another. Once an owner voluntarily hands over the keys to his car, the extent of permission he actually grants is as irrelevant in the one case as in the other. And as *Matits* and its progeny indicate restrictions are irrelevant in scope cases. *** We think that once the initial permission has been given by the named insured, coverage is fixed, barring theft or the like." 55 N.J. 542, 549-550, 264 A.2d 38, at 42.

Illinois has long followed the rule that if the named insured has initially given permission to another to use the insured vehicle, a deviation from the authorized use does not serve to terminate the permission. As stated in *Konrad v. Hartford Accident & Indemnity Co., 11 Ill. App. 2d 503,* "When the named insured has initially once given

permission to another person to use his motor vehicle but that person deviates from the permission granted, Illinois follows the so-called initial permission rule to the effect that the user need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is with 'permission,' under the omnibus clause, though that use may be for a purpose not contemplated by the named insured when he parted with possession of the vehicle; if the original taking by the user is with the named insured's consent, every act of the user subsequent thereto while he is driving the vehicle is with the named insured's permission so far as the omnibus clause is concerned, assuming there is no termination of permission; a deviation from the permission is immaterial; the only essential thing is that permission be given in the first instance; the rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use ***." 11 Ill. App. 2d 503, at 514-5.

Our examination of the many decisions of the appellate court leads us to conclude that the question of whether coverage is provided under an omnibus clause should not depend upon the tenuous factual distinctions reviewed in those opinions. Under our opinion in *Hays,* if Thomas Smythe had been present in the automobile at the time of the collision, coverage would unquestionably have been provided Horton under plaintiff's policy. The alleged limitation of the scope of the authority granted Thomas was that he was not to permit anyone else to use the automobile and there appears to be no valid reason to hold that the deviation from the scope of the authority granted him should serve to terminate that authority if he were not in the car, and not do so if he were a passenger at the time. We agree with the Supreme Court of New Jersey "that once the initial permission has been given by the named insured, coverage is fixed, barring theft or the like." We hold, therefore, that the circuit court did not err in directing a verdict against plaintiff and in entering judg-

ment holding that coverage was provided Horton under its policy.

The omnibus clause in defendant's policy provides a subjective, less stringent test than does plaintiff's in that coverage was provided Horton if the use was "with the permission, or reasonably believed to be with the permission, of the owner ***."

In view of our holding that the initial permission rule applies, coverage was also afforded Horton under defendant's policy. The circuit court did not err in directing a verdict against defendant and correctly held that the coverage provided under plaintiff's policy was primary and that afforded under defendant's policy was excess. For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*