UNITED STATES FIRE INSURANCE COMPANY, Plaintiff-Appellee, v. LEE KENDLE et al., Defendants-Appellants—(GENERAL CASUALTY COMPANY OF WISCONSIN et al., Intervening Petitioners-Appellees.)

(No. 73-16;

Second District—November 1, 1974.

Nettles, Mahoney & Mahoney and William Schirger, both of Freeport, for appellants.

Bert P. Snow, of Freeport, and Gunner, Keller & Magdich and Luke R. Morin, both of Dixon, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This action for declaratory judgment was brought by the United States Fire Insurance Company (hereinafter referred to as U.S.F.I.) as plaintiff, and by General Casualty Company of Wisconsin (hereinafter referred to as General Casualty) and United States Fidelity and Guaranty Company (hereinafter referred to as U.S.F. & G.) as intervening petitioners, in the circuit court of Stephenson County under the provisions of section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 57.1). The insurance companies sought to determine whether any or all insurance policies issued by these companies provided insurance coverage for the defendant, Lee Kendle, in connection with claims for personal injuries made against him by the defendant, Ann Godber. After a trial on the merits the trial court, sitting without a jury and relying upon the Illinois Supreme Court Decision in *Hays v. Country Mutual Insurance Co.* (1963), 28 Ill.2d 601, 192 N.E.2d 855, found that none of the insurance policies provided coverage for Lee Kendle. The defendants appeal from this decision and the order of the court denying the post-trial motions to set aside the declaratory judgment.

Subsequent to the trial court's decision in this case and subsequent to the filing of the briefs on appeal, the Illinois Supreme Court issued its opinion in *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill.2d 333, 297 N.E.2d 163, which re-examined the *Hays* decision. Thus, the question before us now is whether, under the facts of this case, the Illinois Supreme Court decision in *Maryland Casualty* requires us to reverse the trial court's decision.

On November 4, 1966, 15-year-old Lee Kendle, an unlicensed driver, drove a 1962 Chevy II Nova convertible into a utility pole, severely injuring a passenger, defendant Ann Godber. Fortunately for Ann, the car came to rest in the driveway of a hospital and she was thus able to survive the accident.

The car was owned by one William C. Abbott, who was enroute to Kentucky with his wife in his family's other automobile at the time of the accident. Before William C. Abbott went on his trip he left the keys to the automobile in the possession of his 16-year-old son, Ronald. Ronald, who along with his mother was a primary driver of the car, had his father's permission to drive the automobile. His father, however, expressly prohibited Ronald from allowing anyone else to drive the car.

While his parents were away on their trip, Ronald had a party at his parent's house. His girl friend, Ann Godber, whom he later married, and his friend, Lee Kendle, attended the party. During the course of the party Ann had a quarrel with Ronald and wanted to go home. Unfortunately, Ronald was too drunk to drive her home. Lee Kendle, being a good

friend, offered to take Ann home. Ronald was a little hesitant about this arrangement but somehow Lee obtained the keys from the inebriated Ronald. On his way home, Lee, who also was under the influence of intoxicating beverages, ran into the utility pole while attempting to squeal his tires as he accelerated from a stop sign.

Lee Kendle had no insurance coverage of his own. However, U.S.F.I. issued to William C. Abbott, as named insured, a policy of liability insurance which covered the 1962 Chevy II automobile. The policy contained the following omnibus clause:

"Persons Insured: Under the Liability and Medical Expense Coverages the following are insured:

(a) with respect to an owned automobile,

* * *

(2) any other person using such automobile, with the permission of the named insured, providing his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *."

The policy specifically excluded Ronald Abbott. It contained the following clause:

"It is agreed that the insurance afforded by this policy shall not apply with respect to any claim arising from accidents which occur while any automobile is being operated by * * * Ronald N. Abbott."

There was also in force a policy of liability insurance issued by General Casualty to Ray Kendle, the father of the defendant Lee Kendle, which contained the following provision:

"Persons Insured: Under the liability and medical expense coverage, the following are insureds:

* * *

(b) with respect to a non-owned automobile,

(1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission * * *."

Finally, U.S.F. & G. issued a policy of liability insurance to Ronald Abbott as the only insured and scheduled no vehicles. The policy contained a "non owner policy" endorsement which provided in part:

"1. With respect to the insurance for Bodily Injury Liability * * * the unqualified word 'Insured' includes (a) such Named Insured and spouse, and (b) any other person or organization legally re-

sponsible for the use by such Named Insured or spouse of an automobile not owned or hired by such other person or organization. (2) This insurance does not apply:
(a) to any automobile owned by the Named Insured or a member of the same household other than a private chauffeur or domestic servant of the Named Insured or spouse * * *."

With respect to the insurance policies issued by U.S.F.I. and General Casualty, under the above-quoted clauses the companies would be obligated to provide insurance coverage to Lee Kendle only if he had permission to drive the Chevy II automobile from the insured owner, William Abbott, or from a permitted user of the automobile who has been delegated such power to grant permission by the owner. See *Hays v. Country Mutual Insurance Co.* (1963), 28 Ill.2d 601, 608, 192 N.E.2d 855, 859.

As Lee Kendle was not given direct permission to use the car by the owner, William Abbott, the central questions in the trial court were whether or not William Abbott had delegated his power to grant permission to his permitted user of his car, his son Ronald, and whether Ronald had then granted permission to Lee Kendle to use the automobile. Under the *Hays* decision the mere granting of permission by the insured owner to one user does not inherently carry with it a delegation of the power to grant permission to a third person to use the automobile. Only where there has been an express or implied delegation of such power may the original user grant permission to others to use the automobile. In resolving this case, the trial court assumed, without deciding, that Lee Kendle had permission from Ronald to drive the car. The trial court, however, found that William Abbott had neither expressly nor impliedly delegated power to grant permission to his son Ronald. Thus, applying the *Hays* doctrine, the court concluded that U.S.F.I. and General Casualty did not provide insurance coverage to Lee Kendle.

. Under *Maryland Casualty*, however, the granting of permission by the insured owner to another to use the car also conveys to that user the power to grant permission to others to use the car, even in the face of an express prohibition by the insured owner not to do so. The supreme court adopted this more liberal rule by applying "the initial permission rule" to situations where the original permittee had deviated from the insured owner's authorization by allowing another person to use the car. Under the initial permission rule, if the insured owner has initially given permission to another to use the insured vehicle or automobile, a deviation from the authorized use does not serve to terminate the permission. Thus, the court abolished any distinction, which existed since *Hays*, between a case where a first permittee exceeds the scope of permission in

terms of time, place or purpose and a case where such initial permittee exceeds the scope of permission in terms of use of the automobile by another. As stated by the Illinois Supreme Court, " '* * * once the initial permission has been given by the named insured, coverage is fixed, barring theft or the like.' " *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill.2d 333, 342, 297 N.E.2d 163, 168.

Therefore, as Ronald had permission to use the car from his father, under the rule of *Maryland Casualty* this case would appear to turn on whether or not the initial permittee, Ronald, gave permission to Lee Kendle to use the car, a question not decided by the trial court. Nevertheless, U.S.F.I. and General Casualty urge that, under *Maryland Casualty,* the facts in this case mandate this court to find no insurance coverage upon Lee Kendle even if he had Ronald's permission to use the car. First, the companies contend that because Lee Kendle was an underage, unlicensed driver at the time of the accident, Ronald's granting of permission to Lee was an ineffective act. They argue that the granting of permission and the driving of a car by an underaged, unlicensed driver are illegal and criminal acts. Thus, the companies argue that such illegal acts, or any illegal act, come within the supreme court's exception to the general rule of *Maryland Casualty,* that acts constituting "theft and the like" relieve the companies of the obligation of providing coverage to a successive user ( " 'Once the initial permission has been given by the named insured, coverage is fixed, barring theft or the like.' ") We disagree.

■■ Acts which constitute "theft and the like" do not embrace all illegal or criminal activities. If any illegal or criminal act committed by a successive permittee would cut off the insurance companies' duty to cover him, the companies would almost never be obligated to provide coverage in these situations because the negligent operation of an automobile resulting in injury almost always involves some violation of the Vehicle Code. (*Cf. Odden v. Union Indemnity Co.* (1930), 156 Wash. 10, 286 P. 59, 61.) Rather, "theft and the like" include only those situations where the successive user does not have permission from the insured owner or the initial permitted user.

■■ Furthermore, the policies themselves do not prohibit the granting of permission to an unlicensed, unprivileged driver. Neither policy expressly excludes a permitted underaged or unlicensed person (in the case of U.S.F.I.) or a permitted underage or unlicensed relative (in the case of General Casualty) from insurance coverage. Therefore, we find that the insurance policies provide coverage to an underage, unlicensed person or relative who has permission to use the automobile.

Next, U.S.F.I. contends that its policy does not provide coverage for Lee Kendle because Ronald could not grant permission to use the car

under the terms of the insurance policy. U.S.F.I. argues that Ronald did not have such power to grant permission because Ronald himself was expressly excluded from insurance coverage. Again, we disagree.

■■ Although the policy expressly excludes Ronald from coverage, the policy does not expressly prohibit Ronald's father from delegating his power of permission to his son. "Ambiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured." (*Bell v. Continental Assurance Co.* (1970), 123 Ill.App.2d 274, 278, 260 N.E.2d 114, 116.) Accordingly, we find that express prohibition of insurance coverage on Ronald is not an implied prohibition on Ronald's granting permission to others to use the car. Therefore, while Ronald may not be covered under this policy even though he had his father's permission to drive the car, other users who have gotten the insured father's permission through Ronald will be covered.

Thus, we find that under the doctrine of *Maryland Casualty* the policies of U.S.F.I. and General Casualty provide insurance coverage for Lee Kendle if he had Ronald Abbott's permission to use the car. Because the evidence on this question is conflicting and the trial court did not resolve this question, we remand the case for determination of this question of fact. If the trial court finds such permission had been granted, we direct the court to enter judgment in favor of the defendants and against the plaintiffs U.S.F.I. and General Casualty. On the other hand, if the trial court finds that no such permission had been granted, we direct the court to enter a judgment in favor of the plaintiffs U.S.F.I. and General Casualty and against the defendants.

The defendants, however, urge that with respect to U.S.F.I., we reverse outright. They contend that U.S.F.I. waived its policy defenses because it failed to promptly notify defendant of its intention to disclaim liability and because one of its attorneys represented Lee Kendle in the personal injury suit brought against Kendle by Ann Godber.

It is well settled that if the insurer wishes to disclaim liability under its policy, it must notify the insured without delay. (*Krutsinger v. Illinois Casualty Co.* (1957), 10 Ill.2d 518, 141 N.E.2d 16.) However, such duty to notify cannot arise until the insurance company is called upon to defend or pay any claim. Until that time the question of whether a claim will be made is speculative and, thus, there is no reason to disclaim liability. *Cf. Gibraltar Insurance Co. v. Varkalis* (1970), 46 Ill.2d 481, 263 N.E.2d 823.

■■ In the case before us U.S.F.I. did not disclaim liability until it filed its declaratory judgment suit, a year and a half after the accident. The record, however, does not disclose when U.S.F.I. was first called upon

to defend or pay the claim. Thus, we cannot say that U.S.F.I. waived its policy defenses because it failed to promptly notify the defendant of its intention to disclaim liability.

■■ It is also well settled that assumption of the insured's defense by the insurer's attorney constitutes a waiver of all questions of policy coverage. (*Gibraltar Insurance Co. v. Varkalis, supra.*) We find, however, that U.S.F.I. did not waive its policy defenses when its attorney in the declaratory judgment suit represented the defendant in the personal injury suit. The attorney merely filed a motion for a continuance for defendant's ailing counsel. The attorney did not participate in any action going to the merits of the personal injury suit. Therefore, such action did not amount to insurer's taking over Kendle's defense. Compare *Gibraltar Insurance Co. v. Varkalis, supra.*

■■ With respect to the insurance policy issued by U.S.F. & G. covering Ronald Abbott, the defendants contend that the facts in this case require us to reform this policy in such a way as to provide coverage for Lee Kendle. Defendants argue that because Ronald was not covered under his father's policy, the contemplated purpose of the U.S.F. & G. policy was to provide insurance coverage for Ronald whenever he drives. Defendants note that as the policy is presently drafted Ronald Abbott is not insured under the policy whenever he drives his father's Chevy. II, the car he primarily drives, because of the household exclusion clause quoted above. Thus, the defendant contends the parties made a mutual mistake requiring a reformation of the insurance policy. We find, however, that U.S.F. & G. would not be obligated to cover Lee Kendle even if the policy were reformed. The reformation needed to cure the mutual mistake of the parties would only encompass the striking of the household exclusion clause from the contract. By dropping the clause Ronald would then be covered whenever he drives the Chevy II, a household vehicle. Thus, it would not be necessary to add an omnibus clause. Consequently, Ronald would still be the only person insured and Ronald's permittees would not be covered under this policy either as it is presently drafted or under defendants' proposed reformation.

The plaintiffs also contend that Lee Kendle's appeal should be dismissed because his post-trial motion was not filed within 30 days of the entry of the declaratory judgment as required under Supreme Court Rule 303 (Ill. Rev. Stat. 1971, ch. 110A, par. 303). Therefore, they argue, that the 30-day time period for filing the notice of appeal was not stayed and, thus, Kendle's subsequent notice of appeal was not timely filed. We disagree. The defendant, Ann Godber, filed a post-trial motion within 30 days of the entry of the declaratory judgment. We find that the filing of

this motion stayed the running of the time period for filing the notice of appeal for all parties.

In a multiple-party action, a notice of appeal from a final judgment adjudicating the claims of less than all the parties need not be filed until 30 days after the entry of a final judgment which adjudicates all claims of all parties where the trial court has not made an express written finding that there is no just reason for denying appeal. (See *Defenbaugh v. Streator Canning Co.* (1967), 80 Ill.App.2d 423, 224 N.E.2d 487; Ill. Rev. Stat. 1971, ch. 110A, par. 304.) When a post-trial motion has been timely filed by one party, the judgment as to that party does not become final until an order disposing of the motion has been entered. Accordingly, in a multiple-party action the filing of a timely post-trial motion by one party after a judgment adjudicating all the claims of all the parties stays the running of the 30-day time period for the filing of the notice of appeal for all parties involved until after the entry of an order disposing of the timely post-trial motion. As Lee Kendle filed his notice of appeal within 30 days of the entry of the order disposing of Ann Godber's timely post-trial motion his notice of appeal from the declaratory judgment was timely filed. Therefore, we will not dismiss his appeal.

For the foregoing reasons the judgment of the trial court with respect to U.S.F.I. and General Casualty is reversed and remanded and the trial court's judgment with respect to United States Fidelity and Guaranty Company is affirmed.

Affirmed in part, reversed in part, and remanded with directions.

T. MORAN, P. J., and SEIDENFELD, J., concur.