WESTERN STATES MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, *v.* JOHN VERUCCHI *et al.*, Defendants-Appellees.—(PEKIN FARMERS INSURANCE COMPANY, Defendant and Counterplaintiff-Appellant.)

Third District   No. 75-98

Opinion filed April 14, 1976.—Rehearing denied May 12, 1976.

Michael T. Reagan, of Berry & O'Conor, of Ottawa, for appellant.

Daniel Russell, of Johnson, Martin & Russell, of Princeton, Paul Perona, of Perona & Perona, of Spring Valley, and Louis Olivero, of Peru, for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

A declaratory judgment action was brought to determine coverage under the omnibus clause of an automobile liability policy where the

driver of the insured's automobile was a subsequent user operating the vehicle without the express permission of either the owner or the initial permittee. The trial court held that the owner's insurance provided primary coverage, and the driver's insurance provided excess coverage.

The facts of this case are virtually undisputed. On the evening of March 29, 1970, Robert Elmendorf, 16 years old, received his father's permission to use the family car. He drove with friends to a nearby youth center in Spring Valley, and later drove to Peru where he parked the car in a parking lot across the street from the Igloo restaurant, a popular teen-age gathering place. Robert removed the keys from the ignition and placed them either in or on the console immediately to the right of the driver's seat. Robert and his friends, Raymond Marenda and John Verucchi, went into the Igloo restaurant.

After remaining there for a time, John and Raymond told Robert it was time to go, and Robert, who was visiting with other friends, said he would be along in just a minute. John and Raymond went out to the Elmendorf car and, after waiting about five minutes, John found the keys, started the car, and backed out of the parking lot. He then drove the car several blocks and collided with a car driven by Gayle Murphy. Gayle was driving the Murphy car with the permission of his father Gaylord Murphy, who owned the car. John, who was 15 years old and not a licensed driver, fled the accident scene and obtained a ride home to Spring Valley without notifying Robert of the accident. John testified that he had intended to drive the car across the street to wait for Robert in front of the restaurant, but, because heavy traffic prevented a left turn, he decided to circle the block to reach the restaurant.

Robert had been instructed by his father never to let anyone else drive the Elmendorf car. Robert frequently went places with his friends, including John, and none of them ever drove anyone else's car. Robert did not give John permission to drive the Elmendorf car the night of the accident or any other time, and there was no mention of waiting in the car or driving it across the street when John and Raymond talked to Robert before leaving the restaurant. John testified that his decision to drive the Elmendorf car was sudden and was made by him alone, and that it never entered his mind whether Robert would want him to drive across the street.

The Elmendorf car was insured by Pekin Farmers Insurance Company, whose policy contained the standard "omnibus clause" which provided:

"Persons insured: The following are insureds under Part I:

(a) With respect to the owned automobile * * *

(2) Any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not

operating) his other actual use thereof is within the scope of such permission."

John's father, Arthur Verucchi, had automobile liability insurance with Western States Mutual Insurance Company. The Western policy included the following standard provision:

"Persons insured: The following are insureds under Part I: * * *

(b) With respect to a non-owned automobile, * * *

(2) Any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation of (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission of the owner and is within the scope of such permission * * *"

Gayle Murphy, and his father Gaylord Murphy, filed suit for personal injuries and property damage in the Circuit Court of La Salle County against William Elmendorf, Robert Elmendorf, and "John Verucchi, a Minor, by and through Arthur Verucchi, his Father and Next Friend." Western appeared to defend John Verucchi and served a notice of reservation of rights upon his father Arthur Verucchi. Western then filed this declaratory judgment action to determine the rights and obligations of all the parties.[1]

The primary issue on appeal is whether John Verucchi should be afforded coverage under the omnibus clause of either Pekin's policy or Western's policy or both.

■■ Formerly, John Verucchi, as a subsequent user, would have been covered by the omnibus clause of the Elmendorf policy only if Robert Elmendorf, the initial permittee, had been given either express or implied authority to permit others to operate the vehicle.(*Hays v. Country Mutual Insurance Co.* (1963), 28 Ill. 2d 601, 192 N.E.2d 855.) This rule was abrogated in a landmark decision, *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, 297 N.E.2d 163, which held that, when an insured owner grants permission to another to use the automobile, the permittee then has authority to give others permission to use the car, even though the owner expressly prohibits such subsequent use. Thus the "initial permission rule," which imposes insurance coverage even though the actual use of the vehicle is outside the scope of the permitted use, was extended to situations where the original

---

[1] State Farm Insurance Company was named a defendant because they provided uninsured motorist coverage for the Murphy car. Certain defenses were alleged by State Farm, but the court agreed to hear those issues later if neither Western nor Pekin were found liable, and therefore no questions concerning the State Farm policy are involved in this appeal.

permittee deviated from the owner's authorization by allowing another to drive.

In *Maryland Casualty*, the insured owner permitted his son to drive a family automobile and had instructed him never to allow anyone other than a member of the family to drive a family car. As the son was leaving a party, he exchanged cars with a friend, and the friend was involved in an accident. The Supreme Court held that the owner's initial permission was not terminated by his son's deviation from the scope of the authority granted him, and stated:

" '* * * once the initial permission has been given by the named insured, coverage is fixed, barring theft or the like.' " 54 Ill. 2d 333, 341, 297 N.E.2d 163, 168.

In *Maryland Casualty*, the driver at the time of the accident was unquestionably a subsequent permissive user since he had exchanged cars with the owner's son who was the initial permittee.

Since *Maryland Casualty*, two appellate court decisions have dealt with the issue which is to be decided here: Who is liable for damages where the subsequent user was involved in an accident after obtaining use of the car without express permission from the initial permittee?

In the first case, *United States Fire Insurance Co. v. Kendle* (2d Dist. 1974), 23 Ill. App. 3d 531, 318 N.E.2d 644, the car owner's son, who was the initial permittee, became inebriated at a party and had an argument with his girlfriend. A friend, who was underage and had no driver's license, obtained the keys in some undisclosed manner and took the car to drive the girlfriend home. On the way, the car crashed into a utility pole. The court discussed the *Maryland Casualty* case, and then stated that acts constituting "theft or the like," which would relieve the insurer of its obligation to provide coverage to a successive user, include "those situations where the successive user does not have permission from the insured owner or the initial permitted user." (23 Ill. App. 3d 531, 536, 318 N.E.2d 644, 648.) Thus, only those subsequent users who obtain the constructive permission of the owner, through the initial permittee, would be insured under the owner's policy. The court remanded the cause to the trial court for a finding whether the owner's son had in fact given such permission to the driver.

In *United States Fidelity Guaranty Co. v. McManus* (1st Dist. 1975), 32 Ill. App. 3d 370, 336 N.E.2d 252, (leave to appeal allowed), the First District Appellate Court, in a similar case, held that "theft or the like" is limited to criminal conduct, and that the car owner's insurer must provide coverage for any subsequent user, except a thief, once the owner has turned the car over to a first permittee. In *McManus*, the court said:

"The rationale for the *Maryland* decision was to bring simplicity to what had become a complex area of the law necessitating

frequent litigation and to further implement a policy long adhered to regarding the benefit received by the public from private insurance contracts. The court stated that 'the question of whether coverage is provided under an omnibus clause should not depend upon the tenuous factual distinctions reviewed in [many previous appellate court] opinions' * * *. The court in *Maryland* * * * also reasoned that '* * * the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use * * *.'" 32 Ill. App. 3d 370, 373, 336 N.E. 252, 254.) (Citations omitted.)

■■ In *McManus*, the reviewing court virtually rewrote the insurance contract, thereby involving strict liability in the guise of public policy. In the absence of a directive from the Illinois Supreme Court or from the State legislature, we are of the opinion that we may not ignore the language of a contract in order to impose liability on an insurer for a loss not contemplated by the parties to that contract. Compare *Shelton v. Equitable Life Assurance Society* (1st Dist. 1961), 28 Ill. App. 2d 461, 171 N.E.2d 787.

We believe the *Kendle* decision correctly recognized that *Maryland Casualty* expanded the scope of an initial permittee's authority to allow others to operate the car, without regard to any restrictions placed upon him by the owner. *Maryland Casualty* did not, however, consider the question of a subsequent non-permissive user. *McManus* extended the *Maryland Casualty* decision to require coverage of every subsequent user except a thief. The court in *McManus* in effect said that, by operation of law, anyone using a car after the initial permittee is conclusively presumed to do so by authority of the owner unless he committed a theft. Under this theory, if Robert Elmendorf had been the owner of the car, instead of the initial permittee, John, as a non-permissive user, would not have been covered by the owner's insurance, but, since here Robert was an initial permittee, John would be covered by the owner's policy. We find this result too illogical to be tolerated.

In our view, the import of the *Maryland Casualty* decision was to place the initial permittee in the shoes of the owner for purposes of determining the scope of his authority. Thus, if Robert had granted permission to John or anyone else to drive the family car, they would have been insured; however, anyone using the car without his permission would not be covered.

■■ We are not concerned with whether John committed a theft of the Elmendorf car since none of the parties contend that John had the necessary intent to commit a theft. However, it is clear from the testimony in the record that he drove the car without express or implied permission of either the owner or the initial permittee. Accordingly, we

conclude that the trial court erred in holding Pekin liable under the Elmendorf insurance policy, and we reverse the judgment against Pekin.

The trial court also found that Western was required to provide coverage, limited to excess liability, on the same erroneous theory, *i.e.*, that John as a subsequent user, not a thief, was automatically insured under the omnibus clause of his father's policy. We must now determine whether the judgment against Western was correct on any grounds, regardless of the reasons given by the trial court. *Hausmeister, Inc. v. Waibel* (3d Dist. 1975), 29 Ill. App. 3d 289, 329 N.E.2d 825.

As set out in the Western policy quoted above, Western must provide coverage for John if he had permission to drive or if he "reasonably believed" he had permission. The Illinois Supreme Court, in *Maryland Casualty*, has described this clause as providing a subjective, less stringent test than the clause in the Pekin policy. This clause was analyzed in detail in a recent New Jersey case where the court concluded that the insurer intended a more liberal effect, favorable to coverage, by the "reasonably believed" phrase. In a nearly identical fact situation, the test for determining coverage was held to be whether a reasonable boy of the driver's age, personality and social milieu would believe that the owner or permittee was willing that he drive the car in the circumstances discernible from the record. *State Farm Mutual Automobile Insurance Co. v. Zurich American Insurance Co.* (1973), 62 N.J. 155, 299 A.2d 704; *American Motorists Insurance Co. v. LaCourse* (Me. 1974), 314 A.2d 813.

■■ We must therefore examine the circumstances surrounding John's decision to drive the Elmendorf car. Shortly after 11:30 p.m., on a Sunday night, when John and Ray thought it was time to go home, Robert said he would leave in a minute, but he remained inside the restaurant talking with friends. While waiting in the car, John saw the car keys in the front seat. John knew how to drive and had driven his father's van on previous occasions. He had never been told that he was not supposed to drive the Elmendorf vehicle. He and Robert were close friends and frequently socialized together. John intended to drive across the street as a favor to his friend and wait for him near the door of the restaurant. Although there is no direct evidence that John actually formed a belief that he had Robert's permission, nevertheless, after considering all of these circumstances, the record supports a finding that John "reasonably believed" Robert was willing for him to drive the Elmendorf car. (See *State Farm Mutual Automobile Insurance Co. v. Zurich American Insurance Co.*) As a consequence, Western must provide coverage to John under its policy issued to Arthur Verucchi. We therefore affirm the trial court's judgment requiring Western to afford coverage to John. Western's coverage, of course, will be primary, and not limited to excess coverage.

The other issues argued before this court, including the efficacy of Western's notice of reservation of rights served on Arthur Verucchi, but not on John, need not be considered in light of our resolution of the determinative questions.

The judgment of the trial court is reversed as to Pekin's coverage and affirmed as to Western's duty to provide coverage, with Western's coverage to be primary and not excess only.

Affirmed in part; reversed in part.

ALLOY, P. J., and STOUDER, J., concur.